## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PATRICK KINCAID
1205 7th Street, NW
Apt 303
Washington, DC 20001

and

ASTER TACHEBELE
4704 Babbling Brook Drive
Olney, MD 20832

and

HARDRICK CRAWFORD
 5405 Tinkers Creek Pl
Clinton, MD 20735

and

RASHAD BUGG BEY
1273 Holbrook Terrace, NE
Washington DC 20005


Plaintiffs,

On behalf of themselves and all others
similarly situated,

    v.

**GOVERNMENT OF THE DISTRICT OF
COLUMBIA,**


Defendant.

**Civil Action No.: 15-838 (JDB)**

## CLASS ACTION

**AMENDED COMPLAINT FOR JUDGMENT AND MONEY DAMAGES AND INJUNCTIVE RELIEF AND EQUITABLE RELIEF AND DECLARATORY RELIEF AND JURY DEMAND**

**(§ 1983 Civil Rights Claims)**

**Introduction**

**1.**      Patrick Kincaid, Aster Tachebele, Hardrick Crawford, and Rashad Bugg Bey (the "Named Plaintiffs") on behalf of themselves and the Post & Forfeit Class (defined below) bring this action against the Government of the District of Columbia (the "District") for injuries suffered by them because of the MPD's practice pursuant to the "post and forfeit" statute, D.C. Code § 5-335.01, during the Class Period[1] of assessing people fines for alleged violations of DC statutes and regulations ("collateral offenses," defined below) without providing them any "process" such as a hearing to determine whether the people had actually violated the collateral offenses for which they had been fined before they pay the fine.

**2.**      The practice injured Named Plaintiffs and the other members of the Post & Forfeit Class by depriving them of the "post and forfeit" amounts they had to pay.  It also deprived persons who

---

[1] The class definition in this case is the same class definition as the class definition in Fox, et al. v. Government of the District of Columbia, et al, 10- 2118 (ABJ/JMF)(judgment entered as to Mr. Fox's claims on 2/28/2014 [89]) and Scott v. District of Columbia, 14-817 (GK)(plaintiffs' claims dismissed 4/9/15). Therefore, the Class Period in this case runs from April 29, 2008 until this case is terminated, calculated as follows. The Class Period runs from December 15, 2007, the start of the Class Period in Fox, until this case is terminated, minus the interval between the entry of judgment in Fox (2/28/2014) and the filing of Scott (5/16/14), and minus the interval between the dismissal of Scott (4/9/15) and the filing of the original complaint in this case (6/5/15). Judge Kessler of this Court ruled that tolling in the Fox case ended on February 15, 2013, the date the Court in Fox denied Mr. Fox's motion to reconsider his class claim, rather than the date the entire Fox case was over. Scott v. District of Columbia, 14-817 (GK) [27, p. 15]. But, although that ruling is binding on the District and the individual Scott plaintiffs, it is not binding on the absent class members in the Scott and Fox cases because of the one way intervention doctrine (District moved for a ruling on the merits prior to certification).

were *arrested*[2] in connection with their "post and forfeit" of their liberty while their "post and forfeit" was being processed. It also left everyone who "posted and forfeited" with "arrest[3]" records which the District publically posts on the criminal court section of CourtView, the Superior Court docketing system.

**3.**     There are two *types* of "post and forfeit" in the sense that the MPD administer the "post and forfeit" procedure in two different ways. In the "ticket" type of "post and forfeit", the police issue a "post and forfeit" "ticket" to someone without arresting them or taking them into custody. The ticket is then "held in suspense" for twenty days. "Held in suspense" means the person has twenty days in which to go to the station and to either pay the ticket as a civil fine that does not result in a criminal conviction or to request a court date in District of Columbia Superior Court on the criminal docket as in a "citation[4]" case. Thus, the only way to challenge the "post and forfeit" ticket is through the criminal process.  There is no civil procedure in which the person can challenge the ticket in a civil proceeding as there is in the traffic or parking ticket context. Thus, the major difference between a "post and forfeit" ticket and a traffic or parking ticket is that in a traffic or parking ticket the District provides civil "process" to a person in which they can challenge the traffic or parking ticket in a civil proceeding so that challenging a traffic or parking ticket does not convert the proceedings into a criminal proceeding.

---

[2] As described below in paragraphs 3 and 4 and in other paragraphs, some people who "post and forfeit" do so after they have been arrested and taken into custody and transported to the local District station. Other people receive a ticket without being arrested and taken into custody and go to the station to pay the post and forfeit fine.

[3] The Superior Court Clerk does not enter into the docket cases which are "no papered" (prosecutor declined to prosecute).

[4] Previously D.C. Code § 23-1110(b); now D.C. Code § 23-584.

**4.** In the "arrest" type of "post and forfeiting" the MPD arrests someone for a criminal offense and takes them into custody and then takes them to the local District station such as "5D" or "6D." At the station MPD give the arrested person a choice between (1) "post and forfeiting," that is paying a "post and forfeit" fine, and some other form of station house release (discussed below) such as "citation" release with a court date, or (2) spending a night in jail and going to Superior Court the next morning or on the next court date. At least through 2011 arrested persons offered the "post and forfeit" procedure at the station were offered only two choices: either  "post and forfeit" and pay the post and forfeit fine without a hearing, or (2) spend a night in jail followed by presentment in Superior Court where the charge was usually "no-papered." Until at least 2011 the MPD virtually never offered citation release or any other form of station house release to arrestees to whom it offered the "post and forfeit" procedure. Thus, challenging the charge required: (1) opting out of the civil proceeding and into the criminal proceeding; and (2) spending a night in jail. Conversely, resolving the charge via the "post and forfeit" procedure meant the person had to give up the option of challenging the charge (except in a criminal proceeding).

**5.** Thus, the two "types" of "post and forfeit" are the same in that both violate a person's Due Process rights by imposing a fine without providing "process," that is, a "hearing appropriate to the nature of the case" at which they could present their objections to the government's allegation that they committed the offense they "posted and forfeited" on.

**6.** But, the two "types" of "post and forfeit" are different in that in the "arrest" "post and forfeit" the person faces the Hobson's choice of "post and forfeiting" or spending a night in jail followed by presentment in Superior Court on a criminal offense.

**7.**     During the period of time from at least 2000 up through 2011 the District had an officially established pattern and practice through its MPD of arresting people without probable cause and then making them "post and forfeit" on a collateral offense such as POCA ( "possession of an open container of alcohol") or disorderly conduct by giving them a Hobson's choice between paying the "post and forfeit" fine or spending a night in jail followed by presentment and Superior Court and no-papering of their arrest charges.

**8.**     The District's established practice of funneling these questionable charges and arrests into the "post and forfeit" procedure also shielded the arrests and charges from prosecutorial and judicial review because arrests resolved through the "post and forfeit" procedure do not get referred to a prosecutor and never make it to court.  Nor are such arrests tested by the adversarial system in which a prosecutor prosecutes a case in open court before a judicial officer where the defendant has benefit of counsel.

**9.**     The practice allowed MPD officers to (among other things): (1) simply arrest people they encountered while patrolling instead of counseling them or reasoning with them or dealing with them in any accepted way, i.e., "policing" them; and (2) impose "time-outs" (arrests and brief detentions) on people who had committed no crime; and (3) "punish" people for perceived "offenses" to police authority (often called "contempt of cop") such as criticism of police misconduct conduct or questioning of illegal police commands by arresting them for charges which the MPD officers knew would not stand up to prosecutorial or judicial review and would result in dismissal the next "court" morning if referred to a prosecutor.

**10.**     Basically the District's "post and forfeit" procedure practice allows the MPD to fine people (and in the case of persons "offered" "arrest type" "post and forfeit" to briefly detain or jail them) without first giving them all the process to which they were entitled.

**11.**     This case does not address the "post and *trial*" procedure as it is administered by the prosecutors of the Office of the Attorney General of the District of Columbia ("OAG") in open court before judicial officers pursuant to D.C. Code § 16-704 or D.C. Code § 23-1321(c)(1)(B)(xii)(release prior to trial).  In the "post and trial" procedure, a person arrested on a traffic offense or other minor offense, at arraignment or subsequent hearings, represented by counsel in hearings conducted by a judicial officer in open court, is given the option of not attending future court hearings and not contesting a judicial forfeiture of collateral posted in lieu of proceeding with the case.  See District of Columbia v. Baylor, et al., 125 The Daily Washington Law Reporter 1665 (Monday, August 25, 1997)(Goodbread, J.)(describing history and operation of the "post and *trial*" procedure in Superior Court as it is administered by prosecutors in open court before judicial officers where the arrestee is represented by defense counsel).

## Jurisdiction and Venue

**12.**     This Court has original jurisdiction over the § 1983 "post & forfeit" claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).

**13.**     This Court has supplemental jurisdiction over the "post & forfeit" common law claim pursuant to 28 U.S.C. § 1367.

**14.**     Venue is appropriate in this District.  Each of the claims for relief arose in this judicial district and all events described herein occurred in the District of Columbia.

## PARTIES

**15.**     Each of the Named Plaintiffs is an adult who "posted and forfeited" in the District of Columbia for a collateral offense. A collateral offense is an offense for which a person may "post and forfeit."  The "post and forfeit" fine for each "collateral offenses" is set by the Board of Judges of the Superior Court.

**16.**     The District is a municipal corporation capable of being sued under D.C. Code § 1-102.

**17.**     During all events described herein, all police officers referred to herein, named or unnamed, unless otherwise specified, were police officers of the District of Columbia Metropolitan Police Department acting within the scope of that employment, in furtherance of the interests of the District of Columbia, and under color of the statutes, ordinances, rules, customs, and usage of the District of Columbia.

## DETAILS OF EACH NAMED PLAINTIFF'S POST AND FORFEIT

### Named Plaintiff Mr. Kincaid

**18.**     Named Plaintiff Mr. Kincaid's contact with MPD began about 3:00 pm on August 9, 2014 on O Street, NW between 6th and 7th Street, in Washington, DC.

**19.**     Mr. Kincaid was standing on the corner when an MPD police car rolled by and an MPD "jump out[5]" jumped out of the car, ran over to where Mr. Kincaid was standing, and picked up a cup near his feet.

---

[5] A "jump out" is a police officer (MPD or otherwise) who drives around the African American neighborhoods of the District and roars up to people, usually young black men, and then suddenly "jumps out" and engages the people for real or imagined offenses. It is a creature of the "broken windows" school of policing which encourages police to stop and frisk young men in the hopes of

**20.**     The "jump out" sniffed the cup and then arrested Mr. Kincaid and put Mr. Kincaid in handcuffs.

## At the Station

**21.**     The "jump out" then transported Mr. Kincaid to the MPD's 3d District station house arriving there between 3:00 and 5:00 pm.

**22.**     Mr. Kincaid was placed in a holding cell with other persons.

**23.**     The officers charged Mr. Kincaid with the D.C. Code offense of "POCA," possession of an open container of alcohol.  D.C. Code § 25-1001(a)(1).

**24.**     MPD officers there told Mr. Kincaid that he had two options: if he wanted to come home that night he would have to pay $25.00 to "post and forfeit."

**25.**     $25.00 is a considerable, serious, large amount of money for Mr. Kincaid, who works in the construction business. As of July 1, 2014, the minimum wage in the District of Columbia is $9.50 per hour. So, $25 at the minimum wage represents approximately three hours of work **pre-tax.**

## Mr. Kincaid had to pay $25 to "post and forfeit" for POCA

**26.**     The other option was a night in lock-up followed by transport to Superior Court the next morning.

**27.**     The MPD officers did not offer citation release, posting collateral (without forfeiting), or release on the Detention Journal.

finding contraband, or warrants, and as a means of control and intimidation. Although not as prevalent as it once was the "jump out" practice survives on the streets of the District.

**28.**     Mr. Kincaid was entitled to post bail or collateral (without forfeiting).

**29.**     Mr. Kincaid was entitled to citation release under D.C. Code § 23-584; previously D.C. Code § 23-1110(b).

**30.**     Thus, being forced to choose between "post and forfeiting" and remaining in jail overnight for an offense he did not commit, Mr. Kincaid "posted and forfeited" on "POCA – possession of an open container of alcohol," D.C. Code § 25-1001(a)(1), and paid the "post and forfeit" amount of $25.00.

**31.**     Mr. Kincaid was not given any hearing or "process" where he could contest the charge or challenge the MPD determination that he committed the offense with which he was charged, "POCA," before paying the post and forfeit fine. For example, there was no way he could challenge the "post and forfeit" procedure online or in writing or by going to the local District station to make his challenge before having to pay the fine and make the election between jail and paying the fine.

### Steps MPD followed in booking Mr. Kincaid when he elected the "post and forfeit" procedure

**32.**     The only steps the MPD follows in booking a person electing the "post and forfeit" procedure is interviewing the arrestee, filling out a PD 163 (Arrest/ Prosecution form), filling out a PD 67 ("post and forfeit" form), checking databases for warrants or other holds, or reasons to decide the arrestee is a flight risk.

**33.**     At the point of signing the "post & forfeit" form, or within 15 minutes thereafter, all administrative steps incident to the arrest (such as booking, fingerprinting, identification and

warrants checks) and release determinations, except non-discretionary ministerial acts, were completed.

**34.**    Once the necessary administrative steps incident to the arrest and the release determination were completed, Mr. Kincaid was eligible to be released because at that point the MPD had no legitimate reason to hold him and it had decided not to refer his case for prosecution.

**35.**    Nonetheless Mr. Kincaid was held at the station for several hours longer than the time needed to process his "post and forfeit."

## Named Plaintiff Mr. Bugg Bey

**36.**    On or about June 27, 2008 Named Plaintiff Mr. Bugg Bey and a friend were stopped by the MPD in Washington, DC because, the arresting officer said, they answered a "look out" for a robbery, and then they were arrested and taken to the 5th District MPD station house.

**37.**    Both Mr. Bugg Bey and his friend vigorously protested their seizure, arrest, and detention because they had done nothing wrong and they demanded to be released.

**38.**    After arriving at the station and spending a couple hours there the MPD officers conceded that Mr. Bugg Bey and his friend were not the people they were looking for.

**39.**    But, instead of simply releasing Mr. Bugg Bey and his friend with apologies, the MPD officers refused to release them unless they first "posted and forfeited" $35 each for "disorderly conduct – loud and boisterous."

**40.**    $35.00 is a large amount of money for Mr. Bugg Bey, who  works at a copy shop.

**41.**    Their only other option was a criminal charge of "disorderly conduct – loud and boisterous" – a misdemeanor – and a night in jail.

**42.**     On the same day Named Plaintiff Mr. Bugg Bey paid a fine of $35 under the District's "post and forfeit" procedure.

**43.**     Mr. Bugg Bey was not given any hearing or "process" where he could contest the charge or challenge the MPD determination that he committed the offense with which he was charged, "disorderly conduct – loud and boisterous."  For example, there was no way he could challenge the charge online or in writing or by going to the local District station to make his challenge before having to pay the fine and make the election between jail and paying the fine.

**44.**     Mr. Bugg Bey was held at the station for several hours longer than the time needed to process his "post and forfeit."

### Named Plaintiff Ms. Aster Tachebele

**45.**     On or about April 9, 2010 Named Plaintiff Ms. Aster Tachebele was ticketed but not arrested for the alleged collateral offense of selling cigarettes to a minor in Washington, DC.

**46.**     She received a "post and forfeit" ticket as described ¶ 3.

**47.**     She was not subjected to an "arrest" type "post and forfeit."  See ¶ 4.

**48.**     On or about April 13, 2010 Ms. Tachebele went to the MPD's 5th District station and paid a fine of $100 at under the District's "post and forfeit" procedure.

**49.**     Ms. Tachebele knew that if she did not go pay the ticket the case the case would be converted into a criminal proceeding.

**50.**     $100.00 is a large amount of money for Ms. Tachebele, who was running a store with her family.

**51.**     She was not given any hearing or other "process" at the station before paying the "post and

forfeit" ticket where she could contest the ticket or challenge the MPD determination that she

committed the offense with which she was charged, selling cigarettes to a minor. For example,

there was no way she could challenge the ticket online or in writing or by going to the local District

station to make her challenge before paying the "post and forfeit" fine, as she could do with a

parking or traffic ticket.

**52.**     Her only two options were to pay the fine or to request a court date for a criminal

proceeding in the District of Columbia Superior Court to be prosecuted by the OAG.

### Named Plaintiff Mr. Crawford

**53.**     On or about March 25, 2010 Named Plaintiff Mr. Crawford was stopped by the MPD

while driving a car and charged with the offense[6] of displaying expired tags in March 2010 in

Washington, DC. On or about the same day Mr. Crawford paid a fine of $100 under the District's

"post and forfeit" procedure.

**54.**     $100.00 is a considerable, serious, large amount of money for Mr. Crawford.

**55.**     Mr. Crawford was not given any hearing or "process" where he could contest the ticket or

challenge the MPD determination that he committed the offense with which he was charged,

displaying expired tags, before paying the fine. For example, there was no way he could challenge

the ticket online or in writing or by going to the local District station to make his challenge before

paying the post and forfeit fine.

---

[6] Prior to the enactment of the "The Criminal Penalty for Uninsured Motorist Repeal Emergency
Amendment Act of 2011," effective date October 21, 2011, this was a jailable criminal offense.

**56.**     Mr. Crawford's only two options were to pay the fine or to request a court date for a criminal prosecution in the District of Columbia Superior Court to be prosecuted by the OAG.

## "STATION HOUSE RELEASES'" OF PERSONS ARRESTED BY THE MPD

**57.**     Pursuant to MPD GO [General Orders] 502.05, "The Use of the Detention Journal" ("Detention Journal release"), the MPD is authorized to release from the station houses arrested persons through the "post and forfeit" system, including persons whose arrests or charges are not supported by probable cause.

**58.**     The Fourth Amendment, which permits warrantless arrests only upon a finding of probable cause, requires release on the Detention Journal for an arrest not supported by probable cause.

**59.**     District of Columbia statutes authorize the MPD to make two types of "station house" releases of arrestees whom the MPD intend to charge with offenses: (1) release on citation, if the arrestees meet certain criteria designed to screen out flight risks and persons who are a danger to the community; and (2) release on "bail or collateral."

**60.**     The MPD does release arrestees from the station houses via the "post & forfeit" release procedure authorized by D.C. Code § 5-335.01 under the circumstances described below.

## THE "POST & FORFEIT" PROCEDURE

---

[7] "Station house" release is release of an arrestee directly from an MPD district station or other MPD booking facility as opposed to transporting them to Superior Court for presentment and a release determination hearing or a "no-papering" decision which generally takes place the next day, or the day after that if the arrest is made on a Saturday.

**61.**    In 2005 the Mayor and City Council enacted a statute ("post and forfeit" statute) ratifying and defining the "post and forfeit" procedure and committing the implementation of the "post and forfeit" procedure to the sole discretion of the MPD.  D.C. Code § 5-335.01 (effective on April 13, 2005).

**62.**    The purpose of the "post and forfeit" procedure is to provide a way for the District to collect fines without having to provide process in the way of criminal trials or civil hearings for persons charged with the category of certain misdemeanor offenses known as "collateral offenses."

**63.**    As explained below, with the "post and forfeit" procedure the District is purporting to set up a two track system for resolution of certain misdemeanor criminal offenses which carry fines and jail time known as "collateral offenses."

**64.**    The "post and forfeit" amount for various "collateral offenses" is set by the Board of Judges of the Superior Court.

**65.**    The "post and forfeit" amount is a fine.

**66.**    The "post and forfeit" procedure is administered solely by the MPD according to MPD general orders within the Executive Branch of the District without prosecutorial or judicial oversight.

**67.**    The "post and forfeit" statute commits to the MPD sole discretion about whether to offer "post and forfeit" to someone charged with a collateral offense, and even what offense the person may "post and forfeit" on. D.C. Code § 5-335.01(c).

**68.**    The "post and forfeit" statute does not even require a showing that the person who "post and forfeits" committed the offense for which they are "post and forfeiting."

**69.**     Nor does the "post and forfeit" statute require the MPD to provide to the person who has been "offered" "post and forfeit" a statement of the facts on which the charge or probable cause for the charge is based.

**70.**     As stated above in paragraphs 3 and 4, the MPD "offer" "post and forfeit" in two types.

**71.**     In the first type, the "ticket" type, the MPD do not arrest and take into custody the person to whom they "offer" the "post and forfeit" procedure. The ticket type is administered pursuant to the "PD 61 procedure." <u>Dingle v. District of Columbia</u>, 571 F.Supp.2d 87, 96 (D.D.C. 2008)(officers used force and intimidation to try to get teenager to pay ticket issued under the PD 61 "post and forfeit" procedure rather than request trial date).

**72.**     In the second type of "post and forfeit," the "arrest type," the MPD arrest someone and take them to the station and whether or not they have committed an offense the MPD offer them release upon payment of the post and forfeit fine, usually for an offense such as POCA or disorderly conduct.

**73.**     In neither case is the person offered process in which they can challenge the MPD's contention that they have committed an offense before paying the post and forfeit fine.

**74.**     A person elects the "post and forfeit" procedure by paying the applicable post and forfeit fine and signing a PD 67 form (Collateral/ Bond Receipt).

### How a person elects the "post and forfeit" procedure

**75.**     The MPD give a PD 67 form (Collateral/ Bond Receipt) to persons electing the "post and forfeit" procedure when they pay the post and forfeit fine.

**76.** The MPD does not provide arrestees with the elements of the offense they are charged with to review before electing the "post and forfeit" procedure.

**77.** The MPD does not inform arrestees whether the MPD believes the arrestees' arrests or charges are supported by probable cause.

**78.** The MPD does not provide arrestees with a copy of the PD 163 narrative setting out the facts the MPD contend provide probable cause or any other type of probable cause statement to review before electing the "post and forfeit" procedure. As a result, the person does not know the facts which the MPD contend support the charge and is given no opportunity to consider and make a reasoned decision about the options being presented him, other than "sign this paper or spend the night in jail".

**79.** The fact that someone has paid the "post and forfeit" fine, the amount of the post and forfeit fine, and the "post and forfeit" "charge" are all entered on the PAF docket in the criminal section of CourtView.

**80.** The executed PD 67 form (Collateral/ Bond Receipt) is docketed on CourtView and a pdf image is available to anyone who goes to the Clerk's Office to view it.

## THE MPD FUNNELED ARRESTEES INTO THE "POST AND FORFEIT" PROCEDURE DURING THE CLASS PERIOD BY DENYING THEM OTHER FORMS OF STATON HOUSE RELEASE

**81.** The District of Columbia, through the MPD, has a long history of using its considerable, coercive police powers and arresting people for any reason or no reason, and then taking the people to the police station and funneling the arrestees into the "post and forfeit" procedure by

giving them two choices: (1) "post and forfeit" for disorderly conduct or POCA or another "collateral offense;" or (2) spend a night or more in in the lock up or Central Cellblock awaiting transport to the Superior Court where their cases would be "no-papered" because the arrests were not supported by probable cause and the MPD did not follow up on the arrests with the prosecutor.

**82.**   During the Class Period the District used its coercive police powers to detain or arrest people for "collateral offenses," in many cases whether or not they committed the offense, and even whether or not probable cause to support the arrest existed.

**83.**   For many, their only "option" was a night in jail and transport to the Superior Court for presentment or, more likely, no-papering.

**84.**   For others, the District gave them a ticket and a two week period in which to go to the police station to pay the fine or request a court date.

**85.**   Nobody knows how the MPD decided who must post and forfeit and who need not.

**86.**   The "post and forfeit" statute does not provide any criteria for deciding. D.C. Code § 5-335.01.

**87.**   The "post and forfeit" statute does not incorporate a fault determination requirement.

**88.**   Like the rain, post and forfeit fines fall on the just and the unjust alike, those arrested with probable cause and those arrested without, those who committed the offense and those who did not.

## THE "POST AND FORFEIT" PROCEDURE IS AN IMPERECT ATTEMPT TO SET UP A TWO TRACK SYSTEM FOR HANDLING MINOR MISDEMEANOR ARRESTS

**89.**     The "post and forfeit" procedure originally developed as an informal procedure.

**90.**     In 2005 the City Council codified the procedure in D.C. Code § 5-335.01. However, there is no report associated with the legislation which suggests that the City Council considered the analytical basis of the "post and forfeit" procedure or whether the "post and forfeit" procedure comports with the Due Process Clause or other Constitutional provisions.

**91.**     Viewed analytically, in the "post and forfeit" procedure the District has set up a two track system for resolution of arrests for certain misdemeanor criminal offenses which carry fines and jail time known as "collateral offenses."

**92.**     One track is the criminal justice system where the person's guilt or innocence is adjudicated in proceedings conducted by a judge with benefit of counsel and with the full panoply of constitutional and other procedural protections with punishment and costs imposed only upon conviction.

**93.**     The second track is resolution of the charges by the "post and forfeit" procedure.

**94.**     On a theoretical level, there is nothing inherently unconstitutional about providing two different "tracks" or types of proceedings to resolve a violation of a statute, a criminal proceeding presided over by a judge with the full panoply of Constitutional protections or a civil administrative proceeding where the greatest risk to the person charged is imposition of a civil fine, and, as a result, the person does not receive the full panoply of Constitutional protections required in a trial on a criminal charge.

**95.**     But, if the District does set up a two track system, both tracks must satisfy due process.

**96.**     Both such proceedings must satisfy due process because a person is entitled to notice and a hearing that meets due process before the government deprives them of their liberty or property

whether in a criminal or a civil proceeding; merely providing one constitutional procedure and one unconstitutional procedure as the District does with the "post and forfeit" procedure does not satisfy due process.

**97.**    Therefore, once the District decided to offer people an election between the judicial track and an administrative "post and forfeit" procedure track, the District was obligated to make the administrative "post and forfeit" procedure comport with due process by providing "process," that is, a "hearing appropriate to the nature of the case" at which people offered the "post and forfeit" procedure could present their objections to the government's allegation that they committed the offense they "posted and forfeited" on.

**98.**    So, the District's system has a fatal error.

**99.**    The "post and forfeit" administrative track procedure is unconstitutional because the participant has to pay their "post and forfeit" fine without any "process" at all in which they could contest the charge before having to pay it.

**100.**    Moreover, the District through the MPD imposes the post and forfeit fines on people regardless of whether the person has committed the "post and forfeit" offense with which they are charged.

**101.**    The District offers people the "post and forfeit" procedure only if they agree to "plead guilty" by paying the post and forfeit fine. An example of the process which would satisfy the Due Process Clause for the "post and forfeit" procedure is the process the District provides to people to whom its agents issue parking tickets. First, the person does not have to pay until any challenge is resolved. In the parking ticket context the District provides a process where a person may challenge their ticket online by filing a short statement, or anyone wishing to challenge a parking

ticket can go in person to the Adjudication Services branch of the DMV and demand an unscheduled hearing in front of a hearing examiner in which the owner can present their objections to the ticket prior to having to pay the ticket. http://dmv.dc.gov/node/174782.

**102.**   Similarly, if a person is offered the administrative track to resolve a collateral offense by using the "post and forfeit" procedure they should be able to challenge the charge in an administrative proceeding.

**103.**   Yet, the District's administrative post and forfeit procedure offers no process at all.

**104.**   The District did not (and still does not) give people who opt to "post and forfeit" a hearing at which they can challenge their arrests or culpability and present their objections to imposition of the post and forfeit fines before they pay the fine.

**105.**   The imposition of the fine depends solely on the view of the facts presented by the arresting officer in an *ex parte* process.

## SUBSTANTIVE ALLEGATIONS FOR CLAIMS

## Claim 1

## § 1983 Liability of District of Columbia for failure to provide pre-deprivation notice required by the Fifth Amendment

**106.**   Named Plaintiffs and the other members of the Post & Forfeit Class adopt by reference the contents of the preceding paragraphs as if fully set forth herein.

**107.**   The Due Process Clause requires a governmental agency to provide adequate notice and a hearing to persons before depriving them of liberty or property.

**108.**  The District did not provide pre-deprivation notice and *a hearing* which meets due process standards to Named Plaintiffs or the Post & Forfeit Class before making them pay fines.

**109.**  The District's conduct violated the 5th Amendment due process rights of Named Plaintiffs and the Post & Forfeit Class.

**110.**  Accordingly, Named Plaintiffs and the Post & Forfeit Class are entitled to damages and other relief as set forth below.

## Claim 2

### § 1983 Liability of District of Columbia for failure to provide a pre-deprivation process before imposing punitive detention and criminal fines as required by the Fifth Amendment

**111.**  Named Plaintiffs adopt by reference the contents of the preceding paragraphs as if fully set forth herein.

**112.**  The Due Process Clause guaranteed Named Plaintiffs and the Post & Forfeit Class either a trial conducted by a judicial officer with benefit of counsel before detaining them as punishment and making them pay criminal fines or else a civil process appropriate to the matter conducted by an unbiased officer to determine their liability to pay the "post and forfeit" fines before being assessed the post and forfeit fine.

**113.**  The District did not provide any process at all to Named Plaintiffs and the class members before depriving them of their property, and in cases of persons who "posted and forfeited" in the arrest type "post and forfeit" procedure, and their liberty.

**114.**  Instead, the MPD arrested people and, in their sole, unfettered discretion, made the determination whether the "post and forfeit" procedure was available and whether a person had to

pay a "post and forfeit" fine without regard to whether the person actually committed the offense for which they were charged.

**115.**   The government—federal, state, or local—may not deprive a person of liberty or property without due process of law.

**116.**   Accordingly, Named Plaintiffs and the members of the Post & Forfeit Class are entitled to damages and other relief as set forth below.


## Claim 3

### § 1983 Liability of District of Columbia for Violations of Fourth Amendment by unreasonable seizures of persons and money

**117.**   Named Plaintiffs adopt by reference the contents of the preceding paragraphs as if fully set forth herein.

**118.**   The Fourth Amendment prohibits the District from making unreasonable seizures of persons or property.

**119.**   The District seized Named Plaintiffs and the members of the Post & Forfeit Class and their money without probable cause and seized their substantial "post and forfeit" amounts against their will.

**120.**   The District's policy and practice was the moving force behind the violation of Named Plaintiffs and the members of the Post & Forfeit Class's Fourth Amendment rights.

**121.**   Accordingly, Named Plaintiffs and the members of the Post & Forfeit Class are entitled to damages and other relief as set forth below.

Claim 4

**§ 1983 Liability of District of Columbia for Violations of Substantive Fifth Amendment Rights by imposing criminal fines on persons whose arrests were not supported by probable cause**

**122.**   Named Plaintiffs adopt by reference the contents of the preceding paragraphs as if fully set forth herein.

**123.**   D.C. Code § 5-335.01 implements an officially adopted policy promulgated by the Mayor and the City Council.

**124.**   The MPD implemented the "post and forfeit" procedure" procedure during the Class Period by imposing fines on persons charged with collateral offenses through the "post and forfeit" procedure.

**125.**   The "post and forfeit" amount is a criminal fine.

**126.**   The District of Columbia deprived them of their right to their post and forfeit fines without any basis.

**127.**   Moreover, the District's policy and practice of forcing persons such as Named Plaintiffs who are arrested without probable cause and then forced to "post and forfeit" on disorderly conduct bears no rationale relationship the District may have in preventing criminal conduct.

**128.**   The District's policy and practice was the moving force behind the violation of Named Plaintiffs' and the members of the Post & Forfeit Class's Fifth Amendment substantive due process rights.

**129.**   Accordingly, Named Plaintiffs and the members of the Post & Forfeit Class are entitled to damages and other relief as set forth below.

## Claim 5

### The "post and forfeit" procedure statute is void for vagueness

**130.**   The preceding paragraphs are incorporated and restated as if stated fully herein.

**131.**   The "post and forfeit" statute does not give people adequate advance notice of what they must do to comply with the "post and forfeit" procedure.

**132.**   The "post and forfeit" statute delegates to the discretion of the MPD how to implement the "post and forfeit" procedure.

**133.**   The District of Columbia, through the MPD, maintained during the Class Period a policy, custom or practice of arresting persons without probable cause and then forcing the persons to "post and forfeit" on disorderly conduct or POCA or some other collateral offense by forcing them to choose between "post and forfeiting" or spending a night in jail followed by transport to Superior Court for "no-papering" of the charges because the MPD does not offer them any other form of station house release.

**134.**   Under the Fifth Amendment the "post and forfeit" procedure is valid only if the post and forfeit charge is supported by probable cause regardless of whether the arrest was supported by some other charge.

**135.**   The post and forfeit procedure results in a fine and a disposition that "terminates" the prosecution, resembling a plea more than an arrest, and so the principles underlying rules governing informations under Superior Court Crim. Rule Proc. 7(a) and (c) (requiring "plain,

concise and definite written statement of the essential facts constituting the offense charged") must apply to the "post and forfeit" procedure so the accused knows what he is "post and forfeiting" on so, if other coercive and abusive factors were removed, for example in a "post and trial" context, he could make an intelligent and voluntary decision whether to post because different offenses have different elements and different consequences.

**136.** Construing the post and forfeit procedure to allow the MPD discretion to take post and forfeit amounts on a charge not supported by probable cause, as the MPD with the acquiescence of the Mayor and City Council did during the Class Period, rendered the post and forfeit procedure void for vagueness and overbroad.

**137.** Allowing the MPD to select any offense for the "post and forfeit" offense, even one not supported by probable cause, left the definition of the terms of the post and forfeit procedure (including not just "post and forfeiting" but also the charge "posted and forfeited" on) to the MPD and arresting and charging officers, and thereby invited arbitrary, discriminatory and overzealous enforcement.

**138.** Allowing the MPD to arrest for one charge but to "offer" post and forfeit on another unconstitutionally allowed the MPD to "set" or "admit" to bail as opposed to taking bail pursuant to a schedule set by the Board of Judges by allowing them to select a charge (with a different bail or collateral amount) the arrestee did not commit and set collateral amounts in violation of D.C. Code § 23-1321(a)(judicial officer sets bail) and D.C. Code § 22-1110 and D.C. Code § 5-335.01(g)(MPD must use collateral amounts established by Board of Judges).

**139.** Accordingly, Named Plaintiffs and the Post & Forfeit Class are entitled to damages and other relief as set forth below.

## Claim 6

### Liability of District of Columbia for common law Conversion

**140.**   The preceding paragraphs are incorporated and restated as if stated fully herein.

**141.**   The District is liable in conversion for illegally taking money from Named Plaintiffs and the members of the Post & Forfeit Class pursuant to the "post and forfeit" procedure during the Class Period.

**142.**   The District, through its agents, during the Class Period participated in (1) an unlawful exercise, (2) of ownership, dominion, or control, (3) over the personal property of Named Plaintiffs and the members of the Post & Forfeit Class, (4) in denial or repudiation of their rights thereto.

**143.**   At all relevant times its agents were acting within the scope of their employment pursuant to an official policy of the Mayor and the City Council.

**144.**   Accordingly, Named Plaintiffs and the Post & Forfeit Class are entitled to damages and other relief as described below.

## RULE 23 ALLEGATIONS

**145.**   Named Plaintiffs on behalf of themselves and the Post & Forfeit Class bring this action under Rules 23(a), 23(b) (2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of each person who: (i) during the Class Period (ii) was in the custody of the MPD; (iii) was released via the MPD's "post & forfeit" procedure; and (iv) was made to pay the collateral amount pursuant to that release.

**146.**   Certification of this class under Federal Rule of Civil Procedure 23(b)(2) is appropriate, because the District of Columbia has a policy, pattern, and practice for each claim that has uniformly affected all members the class, and injunctive relief and declaratory judgment and a judgment against the District will benefit each and every plaintiff and class member.

**147.**   The class is entitled to injunctive relief including restitution of the "post and forfeit" amounts paid and sealing of their arrest records.

**148.**   The class is entitled to injunctive relief including enjoining the District from implementing any provision of D.C. Code § 5-335.01.

**149.**   The class is entitled to other injunctive relief, for example, setting up an independent monitor to supervise the MPD's release system to ensure that all arrestees entitled to release under the Detention Journal or on citation or bond or collateral are offered those release options and to prevent the District from continuing to condition releases on non-refundable payments of money, and other relief as may be just.

**150.**   Named Plaintiffs and the class are entitled to declaratory judgment against the District that D.C. Code § 5-335.01 as implemented during the Class Period is unconstitutional.

**151.**   Certification of a class under Federal Rule of Civil Procedure 23(b)(3) is also appropriate, in that common questions of law and fact predominate over any individual questions, and class action treatment is superior for the fair and efficient adjudication of these class claims as detailed below.

**152.**   The class is entitled to monetary relief.

**153.**   Regarding Named Plaintiffs and the Post & Forfeit Class, there are no individual questions on the issue of liability, because all members of the Post & Forfeit Class are injured by the same policy and practices.

**154.**   Among the questions of law and fact common to the classes are:

> a.     whether D.C. Code § 5-335.01 ("post and forfeit" procedure statute) on its face violates the Fourth Amendment;

> b.     whether D.C. Code § 5-335.01 on its face violates either substantive due process or procedural due process under the Fifth Amendment;

> c.     whether during the Class Period the District had a policy and practice of forcing persons charged with collateral offenses especially disorderly conduct and POCA to elect the "post and forfeit" procedure;

> d.     whether D.C. Code § 22-1110 required MPD to offer qualifying arrestees citation release;

> e.     whether such practices, if found to exist, violate any of the Fourth or Fifth Amendments;

> f.     whether plaintiffs and the members of the classes and future members are entitled to equitable relief, and, if so, what is the nature of that relief;

> g.     whether determination of damages suffered by the class can be awarded by a jury setting a damages matrix the class provides the basis for determination of all class members' damages; and

      **h.**      whether determination of damages suffered by a statistically representative sample of the class provides the basis for determination of all class members' damages.

**155.**  The Post & Forfeit Class is so numerous that joinder of all members is impracticable.  The exact number of Post & Forfeit Class members is unknown to plaintiffs at this time, but figures released by the District of Columbia concede that each year over the last 5 years approximately 5,000 people are released under the MPD administered post and forfeit program.

**156.**  Named Plaintiffs' "post & forfeit" claim is typical of the claims of the other members of the Post & Forfeit Class, because Named Plaintiffs and all other members of the Post & Forfeit Class were injured by exactly the same means, that is, by the District's "post & forfeit" release policy or practice.

**157.**  Named Plaintiffs on behalf of themselves and the Post & Forfeit Class will fairly and adequately protect the interests of the members of the Post & Forfeit Class and has retained counsel who are competent and experienced in complex federal civil rights class action litigation.

**158.**  Named Plaintiffs on behalf of themselves and Post & Forfeit Class have no interests that are contrary to or in conflict with those of the class or Post & Forfeit Class.

## CLASS RELIEF DEMANDS

Named Plaintiffs on behalf of themselves and all other members of the Post & Forfeit Class respectfully request that this Court grant the following relief:

**A.**          Enter judgment in their favor on all of their claims;

**B.**          Declare the "post and forfeit" procedure under D.C. Code § 5-335.01 unconstitutional and enjoin the District from implementing any provision of D.C. Code § 5-335.01.

**C.**          Award Named Plaintiffs and the putative class members' nominal damages in connection with any declaration that D.C. Code § 5-335.01 is unconstitutional on its face.

**D.**          Grant a jury trial on all claims so triable.

**E.**          Declare that this action may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) and certifying the Post & Forfeit Class, and designating Named Plaintiffs as the proper representative of the Post & Forfeit Class and appointing William Claiborne as class counsel.

**F.**          Declare that this action may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a), 23(b) (2) and 23(b)(3).

**G.**          Award all Post & Forfeit Class plaintiffs and class members injunctive relief in the form of restitution of the "post and forfeit" amounts paid and sealing their arrest records;

**H.**          Award all plaintiffs and class members compensatory and consequential damages in an amount to be determined at trial;

**I.**          Award plaintiffs attorneys' fees and costs incurred in bringing this action under 42 U.S.C. § 1988 or as determined under the "common fund" rule; and

**J.**                     Grant such other relief as this Court deems just and proper.

| Respectfully submitted, | Respectfully submitted, |
|---|---|
| /s/ William Claiborne<br>**WILLIAM CLAIBORNE**<br>D.C. Bar # 446579<br><br>Counsel for plaintiffs<br>2020 Pennsylvania Ave, NW<br>#395<br>Washington, DC 20006<br>Phone 202/824-0700<br>Email claibornelaw@gmail.com | /s/ Lynn E. Cunningham<br>Lynn E. Cunningham, Esq.<br>DC Bar # 221598<br><br>Counsel for plaintiffs<br>306 Westview Drive,<br>Dubois, WY  82513<br>Phone:  307-431-4158<br>Email:  lcunningham@law.gwu.edu |

## JURY DEMAND

Plaintiffs demand a jury of six as to all claims so triable.


/s/ William Claiborne
WILLIAM CLAIBORNE
D.C. Bar # 446579
Counsel for Named Plaintiffs
and the Post & Forfeit Class