### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PATRICK KINCAID, et al.**<br><br>On behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>   v.<br><br>**GOVERNMENT OF THE DISTRICT OF COLUMBIA**<br><br>Defendant. | Civil Action No: **15-00838 (JDB)** |

### PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Defendant's motion to dismiss [13] should be denied on substantive grounds for the reasons stated below. Moreover, plaintiffs did not waive their rights to challenge the unconstitutional post and forfeit procedure.

The "post and forfeit procedure," D.C. Code § 5-335.01(a), imposes a fine,[1] and before the government may impose a fine, even a civil fine for such a minor infraction as a parking ticket, the government must provide ***pre-deprivation*** notice and a ***pre-deprivation*** "hearing appropriate to the

---

[1] One thing, perhaps the only thing, everyone in this case agrees on is that the post and forfeit fine is a "fine." <u>Fox v. District of Columbia</u>, 851 F. Supp. 2d 20, 31 (D.D.C.2012)("post-and-forfeit payment is in essence a small fine that the District agrees to accept in return for an arrestee's prompt release from jail and the resolution of the charges against him").The post and forfeit amount is a "small fine" which persons arrested for certain non-violent misdemeanors may pay to gain immediate release from custody. District's Memorandum, p. 2 [Document # 13]. The fine is not a lawful administrative cost for a government service such as a fee for defraying the cost of a bond system. <u>Schilb v. Kuebel</u>, 404 U.S. 357, 370-71 (1971); *See* <u>Markadonatos v. Vill. Of Woodridge</u>, 760 F.3d 545, 547 (7th Cir. 2014)(concurrence, Posner, J.).

nature of the case" at which the accused may present their objections to the charge before they had to pay the fine. Nat'l Council of Resistance of Iran v. Dep't of State, 251 F.3d 192, 204 (2001)(*pre-deprivation* notice and a hearing is the default position in procedural due process); Gardner v. Columbus, 841 F.2d 1272, 1279 (6th Cir.1988)(hearing for challenging parking tickets). But, instead, the District gave no "process" at all which violates due process. Propert v. District of Columbia, 948 F.2d 1327, 1332 (D.C. Cir. 1991)(however weighty the governmental interest may be in a given case the government may never reduce the amount of "process" to zero).

Moreover, the American Pipe class action tolling doctrine tolled the statute of limitations for Ms. Tachebele, Mr. Crawford, Mr. Bugg Bey, and every other absent class member of Fox v. District of Columbia, 10-2118 (ABJ)("Fox" or "Fox case"), from the date of filing in Fox, 12/15/2010, until the date the clerk entered judgment in the case on the District's Rule 68 offer of judgment, 2/28/2014. American Pipe & Construction Co. v. Utah, 414 U.S. 538, 553 (1974); Crown, Cork & Seal Co., Inc. v. Parker, 462 U.S. 345 (1983). That tolling renewed and continued during the pendency of Scott v. District of Columbia, 14-817 (GK)(from 5/16/14 to 4/9/15) and during the pendency of this case from date of filing, 6/05/15, to present. Moreover, regardless of whether the issue preclusion doctrine ever operates to bar a successive class action after a denial of class action treatment in a prior case, the issue preclusion doctrine does not apply here to bar Ms. Tachebele, Mr. Crawford, Mr. Bugg Bey's class action for the same reason the rule did not bar Mr. Sawyer's class action in Sawyer v. Atlas Heating – the original putative class action ended before the Court could make a certification decision which found the suit "inappropriate for class action status." American Pipe, 414 U.S. at 553; Sawyer v. Atlas Heating & Sheet Metal Works, Inc., 642 F.3d 560, 564 (7th Cir. 2011). The class definition in this case is the same as the definition in Fox.

Plaintiffs discuss the substantive issues before discussing the statute of limitations issues.

I.      Fundamental Problems With The Distrct's "Hybrid" Post And Forfeit Procedure.

Viewed most generously, the post and forfeit procedure is an attempt by the District to set up a two track system for resolving charges for low level minor offenses, with an abbreviated streamlined civil track that trades off the full panoply of procedural safeguards required in a criminal case which subjects the accused to loss of liberty or large fines in exchange for civil fines and the stripped down process of notice and a "hearing appropriate to the nature of the case" at which the accused may present their objections to the charge in cases where the District wishes to treat the offenses as a civil infraction. *See e.g.*, Gete v. INS, 121 F.3d 1285, 1290 (9th Cir. 1997); Gardner, 841 F.2d at 1279 (pre-deprivation notice and a hearing for challenging parking tickets).

Viewed most harshly, "post and forfeit" is a system for allowing the MPD to arrest people without probable cause for any reason they please, or for no reason at all, and then to shake them down for money charging them from $25 up to $300 to release them and to dismiss their cases. The District may be free to establish a constitutionally valid administrative proceeding to resolve the charge of disorderly conduct and other collateral offenses. But, once the District subjects arrestees to the processes of the criminal justice system and fines them, it binds itself to follow due process. Sullivan v. Murphy, 478 F.2d 938, 960 (1973).

A.  The Section (d)(6) do over clause does not save the D.C. Code § 5-335.01.

The District defends the imposition of the post and forfeit fine without fault or hearing by saying, "Plaintiffs simply cannot show anything that violates their due process rights when they voluntarily chose to submit a small fine for the privilege of being released from custody." Memorandum, p. 2, *citing* Fox v. District of Columbia, 851 F. Supp. 2d 20, 23 (D.D.C.2012)(post and forfeiting is voluntary). As the Fox Court put it, "Yet plaintiff has yet to articulate just what it is that is wrong with offering someone charged

with a minor offense the *choice* to contest the charge in court or to pay a small sum and go home." Fox, 851 F. Supp. 2d at 23 (emphasis in original). With all due respect, what is wrong with the "post and forfeit" procedure is that the government should not be able to use its monopoly on violence and force to arrest people just so it can sell them dismissals at prices too low to refuse. Sullivan v. Murphy, 478 F.2d at 960. Being charged is not enough to fine a person; the government has to show they are liable first. People are happy to have their low level "collateral offenses" treated as civil infractions. But they still want trial first, then sentence.

The reason pre-deprivation notice and a pre-deprivation hearing is the default position is that the best way to prevent substantively unfair and simply mistaken deprivations of property interests in the first place is to give the owner an opportunity to speak up in their own defense, and **to make the State listen to what they have to say, before the deprivation occurs.** Fuentes v. Shevin, 407 U.S. 67, 81-82 (1972). It is much more difficult to retrieve property than to defend it against deprivation in the first place. Fuentes, 407 U.S. at 82.

A person who is deprived of a pre-deprivation hearing loses the benefit of crucial procedural advantages that they never regain. The constitutional infirmity which resulted from the failure to give the "post and forfeit" plaintiffs pre-deprivation notice and a hearing is not cured by the possibility of a hearing subsequently afforded to them upon their motion to set aside the forfeiture under D.C. Code § 5-335.01(d)(6). Armstrong v. Manzo, 380 U.S. 545, 551 (1965)(hearing on motion to set aside adoption decree did not restore father to the position he would have been in had he got pre-deprivation notice and a hearing before the termination of his parental rights).

Mr. Fox's case (plaintiff in the Fox case) illustrates the hollowness of the "do over" remedy of Section (d)(6).  Mr. Fox successfully moved a judicial officer of the Superior Court to seal his arrest

record by establishing by clear and convincing evidence that he did not commit the offense with which he was charged – disorderly conduct. **D.C. Code § 16-802.**  Ps. Ex. # 1. But, his only remedy under the statute for obtaining a refund of his post and forfeit fine was to move the Superior Court to "set aside the forfeiture" and reinstitute the criminal case against him. **D.C. Code § 5-335.01(d)(6).** And since it took far longer to seal the record under **D.C. Code § 16-802** and obtain the order with the finding by clear and convincing evidence that he had not committed the offense than the 90 days allowed by Section (d)(6) even that illusory remedy was foreclosed to him.

### B.  Fundamental Problems With The "Hybrid" Post And Forfeit Procedure.

The District's post and forfeit procedure is a "hybrid" system – part criminal, part civil – for handling  persons (1) not on supervised release, (2) not a fugitive, (3) who get arrested for low level misdemeanors not involving violence, weapons, or drugs, which should be treated as civil infractions. The end goal motivating the system -- reclassifying certain **low level misdemeanor** offenses as civil infractions  so that people found to have committed the offenses pay a civil fine without having a criminal conviction -- is laudable. CCE Post-Arrest Report, p. 11. Even the CCE proposed reclassifying certain **low level misdemeanors** offenses as civil infractions. CCE Post-Arrest Report, p. 11. The Report notes that the American Bar Association is also currently involved in such a project in a number of jurisdictions. Id. The CCE Post-Arrest Report also noted that as a practical matter the real life consequences of a conviction for one of these charges is branding a person as a convict. Id.

Moreover, establishing an administrative track for resolving such **low level collateral** offenses using the District's Officers of Administrative Hearings or some other constitutional administrative system of hearings such as the system the Department of Public Works uses to process parking and

other traffic tickets would achieve the laudable goal of conserving the scarce resources of the District and its criminal justice system and its court system.

But, the District's current "hybrid" system tramples the individual's due process rights. Levying a fine, even a civil infraction, is a deprivation of property. And the government cannot lawfully derive a person of money – even the small amount involved in a parking ticket – without a pre-derivation hearing "appropriate to the nature of the case." <u>Gardner</u>, 841 F.2d at 1279.

The post and forfeit statute is facially unconstitutional because (1) it does not provide for a pre-deprivation hearing on whether the arrestee actually committed the offense for which they[2] were fined before the fine was levied; (2) the statute does not incorporate a "fault" requirement so it allows the MPD to levy fines on an arrestee charged with "collateral offenses" whether or not they actually committed the offense; and (3) the statute is void for vagueness because it violates the second prong of the vagueness doctrine, arbitrary and discriminatory enforcement, because the language of the statute delegates total discretion[3] to the MPD to administer the post and forfeit procedure, to establish the eligibility criteria by which the MPD decides whether to release people on post and forfeit or to refer their cases for prosecution in the criminal justice system.

The CCE Post-Arrest Report suggests that the two main reasons the District has not actually reclassified certain **low level misdemeanors** offenses as civil infractions is that the current system enables the MPD to use its AFIS and other criminal identification systems to positively identify people it wishes to release on post and forfeit and to collect their fines in advance so that people do not "default on" or

---

[2] Plaintiffs herein use "they" as the third person singular pronoun to achieve gender neutrality. http://www.oxforddictionaries.com/us/words/he-or-she-versus-they.
[3] The amendments in D.C. Law 20-243, which became effective April 24, 2015, do provide that the OAG will have input on setting criteria for the application of the statute but due process requires that the legislature spell out the guidelines in the text of the statute or that the state's highest court add a narrowing gloss to the statute. *See* <u>Kolender v. Lawson</u>, 461 U.S. 352, 355-356, n. 4 (1983).

otherwise not pay their post and forfeit fines. *See* CCE Post-Arrest Report, p. 11 (identifying difficulty of collection as major barrier to reclassifying low level misdemeanors such as "collateral offenses" as civil infractions).

But, regardless of the legislature's intent on this point, an objective analysis of the post and forfeit statute does lead to the obvious conclusion that the system enables the MPD to collect fines before releasing people on post and forfeit. In fact, the language of the statute *conditions* release on post and forfeit on payment of the post and forfeit fine. D.C. Code § 5-335.01(a).

### C. Plaintiffs Can Prevail On Their Facial Challenge Without Having To Satisfy The "No-Set-Of-Circumstances" Test: <u>Salerno</u>'s "No-Set-Of-Circumstances" *Dicta* Is Dead.

The post and forfeit statute, D.C. Code § 5-335.01 is facially unconstitutional for the reasons stated above. Moreover, Plaintiffs can prevail on their facial challenge to the "post and forfeit" statute without having to satisfy what has become known as the "no-set-of-circumstances" test originating from *dicta* in <u>United States v. Salerno</u>, 481 U.S. 739, 745 (1987). A facial challenge is an attack on a statute itself as opposed to a particular application. <u>City of Los Angeles v. Patel</u>, 135 S. Ct. 2443, 2449 (U.S. 2015). The Court has never held that these claims cannot be brought under any otherwise enforceable provision of the Constitution. <u>Id</u>. In fact, just last term the Court affirmed facial challenges in two cases. <u>Id</u>., <u>Johnson v. United States</u>, 192 L. Ed. 2d 569, 582 (U.S. 2015).

Thus, the long running debate between Justice Scalia and Justice Stevens over whether the first sentence from the <u>Salerno</u> *dicta*, *supra*, -- what has become known as the "no set of circumstances" prong of Salerno -- is controlling, as recognized by this Court, <u>GE v. Jackson</u>, 595 F. Supp. 2d 8, 15 (D.D.C. 2009), and by the D.C. Circuit, is over. <u>Amfac Resorts, L.L.C. v. United States DOI</u>, 282 F.3d 818, 826 (D.C. Cir. 2002), *vacated and remanded on other grounds* by <u>Nat'l Park Hospitality Ass'n v. DOI</u>, 538

U.S. 803 (U.S. 2003). The <u>Salerno</u> *dicta* is dead. **Also obviously dead is** <u>Hoffman Estates v. Flipside,</u> <u>Hoffman Estates,</u> 455 U.S. 489, 495 (1982) to the extent that it is cited for the proposition that a facial challenge on vagueness grounds cannot succeed where the plaintiff engaged in some conduct that is clearly proscribed by the statute.

Last term, in an opinion authored by Justice Scalia, who in <u>Morales</u> was still championing the "no-set-of-circumstances" *dicta* of <u>Salerno,</u> a majority of the Court held that the idea that a statute must be vague "in all its applications" must be rejected. As Justice Scalia put it for the Court, "We have similarly deemed void for vagueness a law prohibiting people on sidewalks from "conduct[ing] themselves in a manner annoying to persons passing by" — even though spitting in someone's face would surely be annoying." <u>Johnson</u>, 192 L. Ed. 2d at 582. This language and these decisions refute any suggestion that the existence of some possible fact pattern where the statute might conceivably apply to plaintiffs' claims establishes the post and forfeit statute's constitutionality. <u>Id</u>.

## II.     The District's Post And Forfeit Statute Sets Out A Two Track System To Resolve Minor Cases .

### A.   When The Government Sets Up A Two Track Procedure That Deprives People Of A Liberty Or Property Interest, Both Tracks Must Satisfy Due Process.

With the post and forfeit procedure the District seems to be attempting to set up a two track system for resolution of arrests for certain **low level misdemeanors** offenses which carry jail time known as "collateral offenses." One track is the criminal justice system where the person's guilt or innocence is adjudicated in proceedings conducted by a judge with benefit of counsel and with the full panoply of constitutional and other procedural protections with punishment and costs imposed only upon conviction. The second track is resolution of the **low level misdemeanors** charges in a streamlined

administrative proceeding where the greatest risk to the arrestee is imposition of a civil sanction, that is, an arrest record, a fine, and posting of the incident on public docket of the Criminal Division of the Superior Court (CourtView).

On a theoretical level, there is nothing inherently unconstitutional about providing two different types of proceedings to resolve a violation of a criminal statute, a judicial proceeding or an administrative proceeding. Van Harken v. City of Chicago,103 F.3d 1346, 1350 (7th Cir. 1997). Many offenses carry both criminal and civil penalties. Van Harken v. City of Chicago,103 F.3d 1346, 1350 (7th Cir. 1997). And many jurisdictions changed parking violations from criminal offenses to civil offenses and substituted streamlined administrative procedures for the full blown trials required for criminal charges Gardner, 841 F.2d at 1279.

But, whenever the government does set up a two track procedure that deprives people of a liberty or property interest, a streamlined abbreviated procedure and a full blown procedure, **both tracks must satisfy due process.** *See e.g.,* Gete v. INS, 121 F.3d 1285, 1290 (9th Cir. 1997); Gardner, 841 F.2d at 1279.

In Gete, the Customs Department set up a two track system for allowing owners to challenge the seizure and forfeiture of their cars by Customs for alleged INS violations. The system allowed owners to elect between a judicial forfeiture proceeding and an administrative forfeiture proceeding providing for a "personal interview" with an immigration officer. The Ninth Circuit recognized that in theory the system was not necessarily unconstitutional because challenging a seizure in court is expensive and often involved (at that time) not only posting a bond but also hiring a lawyer, and because the government keeps the seized property throughout the course of the lengthy judicial proceedings, many if not most

individuals would opt to pursue their (much quicker and cheaper) administrative remedies rather than a judicial remedy. Gete, 121 F.3d at 1290.

However, the Ninth Circuit held that both such proceedings must satisfy Mullane and Mathews because an owner is entitled to notice and a hearing that meets due process before the government deprives them of their property; merely providing one constitutional procedure and one unconstitutional procedure does not satisfy due process. Gete, 121 F.3d at 1294. The government cannot justify unconstitutional administrative forfeiture procedures merely by pointing to the fact that it provides a lawful judicial forfeiture option. Id. The Gete Court held that the "process" provided by the administrative forfeiture proceeding did not satisfy the due process clause because the notice was inadequate and the "personal interview" with an immigration officer in lieu of a traditional hearing also failed to satisfy due process. Gete, 121 F.3d at 1290. Basically, the only "process" plaintiffs received in their administrative forfeiture proceeding was the timely processing of their claims. Id.

## B.  The District's Second Track, The "Post And Forfeit" Procedure, Is Unconstitutional.

Therefore, once the District decided to offer arrestees an election between the judicial track and a streamlined administrative post and forfeit procedure, the District was obligated to make the post and forfeit procedure comport with due process. But, as explained above and below, the District's system has a fatal error. The post and forfeit streamlined administrative track procedure is unconstitutional because the participant has to pay their $35 (or $25 or $100) fine without any "process" at all. Propert, 948 F.2d at 1332.

## III.    Plaintiffs Did Not Waive Their Right To Challenge The Post And Forfeit Procedure By Post And Forfeiting

Whether plaintiffs or anybody else released on post and forfeit "voluntarily" elected to post and forfeit is a red herring as far as their constitutional claims are concerned. But, even if the plaintiffs' payment of the post and forfeit fine were voluntary, that does not mean that they thereby "waived" their right to challenge it later. Going to trial on a charge based on an unconstitutional statute does not mean a defendant waived their right to appeal because the defendant voluntarily submitted to trial. Nor did the notice provide them with information with which they could make and intelligent and knowing waiver of their due process rights and other constitutional rights.

### A. But, even if the plaintiffs' payment of the post and forfeit fine were voluntary, that does not mean that they thereby "waived" their right to challenge it later.

And, as the <u>Gete</u> Court recognized in a similar case, the issue is not whether Mr. Kincaid, Ms. Tachebele, Mr. Crawford, and Mr. Bugg Bey voluntarily elected the post and forfeit procedure, but whether by "electing" the post and forfeit procedure from the choices presented to them (jail versus release and dismissal) they "waived" their Constitutional right to challenge the constitutionality of the administrative procedure known as post and forfeit."

They did not. *Assuming arguendo* that Ms. Tachebele, Mr. Crawford, Mr. Bugg Bey voluntarily elected the post and forfeit procedure, a voluntary election of a post and forfeit procedure does not constitute a "waiver" of their Constitutional right to challenge the constitutionality of the administrative proceeding known as post and forfeit." <u>Gete</u>, 121 F.3d at 1292-93. In <u>Gete</u>, the Ninth Circuit held that car owners whose cars were seized by Customs for INS violations who voluntarily elected an administrative forfeiture proceeding over a judicial forfeiture proceeding did not thereby waive their right to subsequently challenge the Constitutionality of the administrative forfeiture proceeding. <u>Gete</u>, at 1292-93. The Court recognized that they were challenging the Constitutionality of the administrative

procedure itself and not the merits of an agency decision. <u>Gete</u>, at 1292-93. In holding that there was no waiver the Court noted that when they chose the administrative option instead of posting bond and invoking judicial forfeiture the plaintiffs did not receive any notice whatsoever indicating that they were waiving their right to challenge the lawfulness of the process itself. <u>Gete</u> at 1294.

Plaintiffs' case is even stronger than the plaintiffs in <u>Gete</u> because no agency decision is involved.

The Supreme Court has never held that by taking advantage of what process the government offered a person thereby loses their right to later challenge the amount or character of the process on due process grounds. For example, in <u>Mathews</u> the plaintiff was receiving state disability payments when the state informed him of its tentative decision to terminate his benefits and offered him the opportunity to submit additional reports from his doctor. <u>Mathews</u>, 424 U.S. at 323-24. Plaintiff did submit additional reports from his doctor and after considering them the state still terminated his disability benefits. <u>Id</u>. This "voluntary" submission of additional reports did not block his constitutional challenge. <u>Id</u>. Moreover, his failure to raise his constitutional challenge in the administrative process did not work a waiver. <u>Id</u>.

Similarly, the father in <u>**Armstrong v. Manzo**</u>, discussed above, did not lose his right to challenge the constitutionally of the process in the hearing on motion to set aside the adoption decree terminating his parental rights merely by participating in the hearing.

Moreover, the form "notice" that plaintiffs and every other person who posted and forfeited signed expressly made certain disclosures but did not contain a waiver of the right to challenge the constitutionally of the procedure. The fact that the agreement expressly stated some consequences but did not expressly eliminate the right to challenge the constitutionally of the procedure establishes that challenge of the procedure has not been waived. <u>In re Sealed Case</u>, 702 F.3d 59, 64 (2012).

**B.  Plaintiffs' "election" of the post and forfeit procedure was not "voluntary"**

The plaintiffs posted and forfeited without benefit of counsel under a facially invalid statute administered by the police in their sole discretion which conditioned their release on payment of a fine without any determination of culpability. Any "choice" they made was a Hobson's choice between a night in jail and the maws of the criminal justice system and a potential criminal conviction or payment of a fine. The MPD had sole discretion under the statute to make the election to treat their cases as criminal cases or civil infractions and the District also had the "big stick" of criminal prosecution to force them into an election.

IV.      **Claims 1 And 2; Plaintiffs State A Claim For Procedural Due Process Under Mathews.**

Imposing the post and forfeit fine on arrestees without granting them notice and a hearing violated due process for the reasons discussed below. Since there was no pre-deprivation hearing plaintiffs got no notice of such a hearing which is itself a violation of due process. <u>Mullane v. Cent. Hanover Bank & Trust Co.</u>, 339 U.S. 306, 313-314 (1950).

**A.  The Post And Forfeit Fines Violate Due Process Because Such Predictable, Non-Exigent Deprivations Of Property Require Pre-Deprivation Process**

Plaintiffs paid a fine of money under the post and forfeit procedure ranging from $25 to about $100 without pre-deprivation notice and without a pre-deprivation hearing on liability for the offenses for which they "posted and forfeited. Plaintiffs were entitled to a ***pre-deprivation*** "hearing appropriate to the nature of the case" at which they could present their objections to the government's allegation that they committed the offense the MPD charged them with and they posted and forfeited on. <u>Fuentes</u>, 407 U.S. at 81-82 (default position for due process is **pre-deprivation** notice and a **pre-deprivation** hearing).

Instead, the District gave them "zero" process which violates the due process clause. <u>Propert</u>, 948 F.2d at 1332.

Plaintiffs pled in their Second Amended Complaint that they were entitled to **pre-deprivation** process (District did not provide pre-deprivation notice and a hearing before making them pay fines, ¶ 108; caption, Claim 2, failure to provide a pre-deprivation process before imposing detention and fines; ¶ 113, "before depriving them of their property'). The District did not challenge plaintiffs' specific claim to pre-deprivation hearings. Nor did the District challenge their claim that their fines constituted protectable property interests under the due process clause. Memorandum, pgs. 5-6. Nor did Judge Jackson in Fox hold that the post and forfeit fines were too small to receive consideration under the due process clause. <u>Fox v. District of Columbia</u>, 851 F. Supp. 2d 20, 34 (**D.D.C. 2012**). The notion of a *de minimis* interest which is so insubstantial as to justify dispensing with due process altogether is rightly a narrow one, and, when monetary interests are at stake, the doctrine has been limited to matters involving a few dollars or less. <u>Gray Panthers v. Schweiker</u>, 652 F.2d 146, 156 n.19 (1980)(internal citations omitted).

Since the Second Amended Complaint alleges that the District imposed the fines without any process, let alone pre-deprivation process defendant's process, and the District does not contest that their fines are *de minimis* under the due process analysis, the District's motion to dismiss on this claim should be denied.

1. **The default position for predictable, non-exigent deprivations of property is pre-deprivation notice and a pre-deprivation hearing, and the District did not provide it.**

The default position for due process is **pre-deprivation** notice and a **pre-deprivation hearing**. <u>Fuentes v. Shevin</u>, 407 U.S. 67, 81-82 (1972). The rationale is the best way to prevent substantively unfair

and mistaken deprivations of property interests is to give the owner an opportunity to speak up in their own defense, and **to make the State listen to what they have to say, before the deprivation occurs.** Fuentes, 407 U.S. 81- 82.

Moreover, a person who is deprived of a pre-deprivation hearing may lose the benefit of crucial procedural advantages. For example, in Armstrong v. Manzo, discussed above, a mother and her new husband instituted proceedings to terminate the parental rights of her former husband in their daughter. The trial court conducted the proceedings and entered a decree which terminated the father's rights even though the father had never been given notice of the proceedings and a right to be heard. 380 U.S. at 548. When the father learned of the decree he filed a motion to vacate it. Id. But instead of vacating the decree the trial court allowed the father to put on evidence but denied his motion. Id. at 549. The Texas appellate court confirmed because, it held, whatever constitutional infirmity resulted from the failure to give the petitioner notice had been cured by the hearing subsequently afforded to him upon his motion to set aside the decree. Id. at 551. The Supreme Court reversed for several reasons including that since the father had been denied his original hearing he was deprived of the benefit several crucial procedural advantages. First, had the father had a chance to appear and contest the petition the mother and her new husband would have had the burden of proving that the father had not contributed to the welfare of the daughter during the previous two years commensurate with his abilities. The father could have won if the mother's proof had failed. The hearing offered by the judge inverted this burden and required the father to affirmatively show that he had satisfied his support obligations. Id. This is one reason the so-called "refund" procedure of D.C. Code § 5-335.01(d)(6) does not satisfy due process, as explained below.

Significantly, the Supreme Court bases the justification for the timing of the hearing – before the deprivation – not on the value of the property at issue but on the protections against wrongful and mistaken deprivations a pre-deprivation hearings affords. Fuentes, 407 U.S. 81- 82.

2.   **No exigent circumstances apply to excuse the lack of pre-deprivation process.**

The Court limits exceptions to the "hearing first" rule to "extraordinary situations" where some valid governmental interest is at stake that justifies postponing the hearing until after the event where (1) "the seizure has been directly necessary to secure an important governmental or general public interest;" (2) "there has been a special need for very prompt action;" and (3) "the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance." Fuentes, 407 U.S.at 91; Islamic Am. Relief Agency v. Unidentified FBI Agents, 394 F. Supp. 2d 34, 49 (D.D.C. 2005).

Our Circuit Court has strictly construed the rule that pre-deprivation notice is the default procedure without regard to the value of the property. Examples of "extraordinary situations" justifying dispensing with pre-deprivation hearings in this Circuit are limited to situations involving the "changeable and explosive nature of contemporary international relations, and the fact that the executive is immediately privy to information which cannot be swiftly presented to, evaluated by, and acted upon by the legislature," Palestine Information Office v. Shultz, 853 F.2d 932 (D.C. Cir. 1988), and the seizure of easily hidden assets of someone designated under 21 U.S.C. § 1907(7) of the Kingpin Act as a person that "play[s] a significant role in international narcotics trafficking." Zevallos v. Obama, 793 F.3d 106, 110 (D.C. Cir. 2015).

Our Circuit Court has held that, absent a showing of particularized need, even the Secretary of State had to provide pre-deprivation notice and hearing before designating two entities (the National Council of Resistance of Iran and the People's Mojahedin of Iran) as "foreign terrorist organizations" under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("Anti-Terrorism Act" or "AEDPA"),

8 U.S.C. § 1189, where the designation would have blocked the designees' rights to access its funds in a bank account pending judicial review of the designation. <u>Nat'l Council of Resistance of Iran v. Dep't of State</u>, 346 U.S. App. D.C. 131, 251 F.3d 192, 204 (2001). Significant, the Court did not even mention the amount of money in the account. <u>Id</u>.

The only other exception to the pre-deprivation rule also falls under the "extraordinary situations"exception and deals with seizures easily moved property subject to seizure because pre-deprivation notice would allow the owner to frustrate the forfeiture proceedings simply by moving the property. *See e.g.*, <u>Calero  v. Pearson Yacht Leasing Co.</u>, 416 U.S. 663, 679-80 (1974)(pre-seizure notice of forfeiture to yacht owner would allow the owner to sail the yacht away).. A similar rule applies to cars. Pre-seizure notice and a hearing is not mandated a combination of the need to keep streets clear, the moveable nature of cars, and laws limiting how and where cars can be parked on the street, cars may be towed without pre-seizure notice. <u>Propert</u>, 948 F.2d at 1332.

<u>Mathews v. Eldridge</u> is not an exception to the rule that pre-deprivation notice and hearing are required. <u>Mathews v. Eldridge</u>, 424 U.S. 319 (1976) held that Social Security disability benefits could be terminated without first holding an oral hearing when a formal evidentiary hearing would be available at a later stage in the process and any wrongfully withheld sums would be paid retroactively. Central to the Court's finding that a pre-deprivation evidentiary hearing before an administrative law judge was not required prior to non-final termination of Mathew's disability payments was the fact that the Mr. Mathews had already had sufficient pre-deprivation administrative hearings before the state agency terminated his benefits pending review before an administrative law judge. In <u>Mathews</u> Mr. Mathews was receiving state disability payments when the state informed him of its tentative decision to terminate his benefits and offered a questionnaire and gave him the opportunity to submit additional reports from his doctor. <u>Mathews</u>, 424 U.S. at 323-24. Mr. Mathews answered the questionnaire and the state obtained

additional reports from his doctor and he raised by letter some objections to a characterization of his medial condition. <u>Id</u>. The state still terminated his benefits. <u>Id</u>. at 324. The Social Security Administration ("SSA ") then evaluated and approved the termination. <u>Id</u>., 338. He was also informed of a right to request reconsideration from the state. <u>Id</u>. at 324. The administrative system provided for an evidentiary hearing before an SSA administrative law judge  with the right to counsel followed by an appeal to the SSA Appeals Council with judicial review **following** reconsideration from the state. Mr. Mathews was asking the court to allow him the evidentiary hearing before an SSA administrative law judge without first having go through reconsideration by the state. <u>Id</u>. at 324, 338-340. So the real question in Mathews was whether the pre-deprivation process he had already received was sufficient, not whether he was entitled to pre-deprivation or post deprivation process.

Therefore, the <u>Mathews</u> balancing test does not provide an independent basis for an exception to the default rule of post-deprivation process.

There was no "extraordinary situation" in this case justifying government's pre-hearing deprivations of the plaintiffs' post and forfeit fines. This case is just like the parking or traffic ticket case where the government has elected to treat the violation as a civil infraction. <u>Gardner</u>, 841 F.2d at 1279. In such cases the police officer or other government employee issues a ticket. The government provides an opportunity for some sort of hearing. The person then has the opportunity to challenge the ticket or to simply pay it and to forget about.

The CCE Report suggests that the reason the MPD collects post and forfeit fines in advance is because of the fear that people will default on their obligations to pay. First of all, this fear, even if well founded, is not the sort of exigency that the Supreme Court or this Circuit have held justifies dispensing with pre-deprivation hearings. Moreover, the fact that the Field Arrest (PD 61) type of post and forfeit

procedure gives people 15 days in which to pay the post and forfeit fine (or request a court date) shows that the fear is not well founded.

3. **The availability of a state remedy as a substitute for "process" is not relevant the conduct occurs pursuant to a pattern and practice or an official policy**

Moreover, the availability of a post deprivation state remedy as a substitute for pre-deprivation process is not relevant where, as here, the deprivations occur pursuant to a pattern and practice or an official policy. <u>Tri County</u>, at 516.; <u>Doe by Fein</u>, 93 F.3d at 868 *citing* <u>Zinermon v. Burch</u>, 494 U.S. 113, 129-30 (1990). A plaintiff must prove the lack of an adequate post-deprivation remedy under state tort law only when the conduct which deprives them of a protected interest is random and unpredictable such that the government cannot provide for process. <u>Doe</u>, at 868-869.

4. **The set aside provision does not qualify as appropriate post-deprivation process under the <u>Mathews</u> balancing test.**

Section 5-335.01(d)(6) does not constitute either sufficient post deprivation process or a "refund process" that cures the due process violation.

Plaintiffs demonstrated the hollowness of Section (d)(6) above.

The due process clause applies even to <u>temporary</u> deprivations of property. <u>Fuentes</u>, 407 U.S. at 85-87.  So, depriving a person of property by imposing a fine before a liability hearing but leaving them to get a refund upon a showing of no-liability still would not satisfy due process unless the lack of pre-deprivation process were excused by one of the exception to the default rule requiring post-deprivation process and the post deprivation process satisfied due process. There is simply no sort of

"no harm, no foul" rule in the procedural due process context which allows the government to excuse an unlawful deprivation by a "refund." <u>Fuentes</u>, 407 U.S. at 82. ("This Court has not . . . embraced the general proposition that a wrong may be done if it can be undone.").

There were no exceptions to the "process first" rule applicable here so post-deprivation process does not suffice to defeat the claim. <u>Id</u>.

Section (d)(6) provided that either party could file a motion in Superior Court to "set aside the forfeiture and proceed with the criminal case."

First, although the Superior Court does have jurisdiction to set aside a forfeiture of bail or bond, D.C. Code § 16-704, Superior Court Rule of Criminal Procedure 116, the post and forfeit fine is not a bail or bond because it does not secure a criminal defendant's promise to appear in court at a set time. It is a fine. The Superior Court has no jurisdiction to vacate a fine imposed by the MPD pursuant to a DC statute. The D.C. Council has no power to enlarge the jurisdiction of the Superior Court. D.C. Code § 1-206.02(a)(4).

Next, the only thing Section (d)(6) provides is permission for a person who posted and forfeited to file a motion with the Superior Court. It says nothing about whether the Superior Court will grant the motion. Nor does it say anything about the criteria which the Superior Court would use to decide such a motion. Nor, is it certain that the Superior Court would even have jurisdiction to hear such a motion.

Moreover, any refund the arrestee might get pursuant to Section (d)(6) also triggers reinstatement of the criminal procedure. Finally, the $20 filing fee added to the electronic filing fee, $16.50, exceeds the amount of the post and forfeit fine making any benefit illusory. <u>Van Harken v. City of Chi.</u>, 103 F.3d

at 1353 (a remedy that, quite apart from any attorney's fee, costs more to file than the maximum gain that the remedy can yield is an illusory remedy).

**B.   D.C. Code § 5-335.01(d)(6) Does Not Provide A Hearing Appropriate To The Nature Of The Case.**

The first problem with Section (d)(6) is that it puts the burden on the individual to file a motion when due process in this situation requires the District to provide a prompt hearing. Propert, 948 F.2d at 1332 (the absence of pre-towing process was constitutionally permissible where prompt post-towing notice and a hearing were provided).

Next, even if post deprivation process were allowed in this situation, D.C. Code § 5-335.01(d)(6) would not be sufficient process under the due process clause. Mathews.

Three issues must be weighed in determining whether and how much "process" is due: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. Mathews, 424 U.S. at 335.

private interest. The private interest that will be affected by the official action (forcing election between post and forfeiting" $25.00 (Mr. Kincaid) up to $100 (Mr. Crawford and Ms. Tachebele) and liberty interest in immediate release) is the loss of the $25.00 and the loss of the liberty interest that will occur if a plaintiff did not post and forfeit." Even $25 is a substantial amount these days. $35.00 amounts to about half a day's wages at the federal minimum hourly wage in the District of Columbia as determined by the Department of Labor. http://www.dol.gov/whd/minwage/america.htm#district (last checked

3/21/2013). Thirty dollars is roughly the average allotment under the federal Food Stamp program to help feed an adult for a week. Markadonatos, 739 F.3d at 1000 (Hamilton, J. dissenting)(opinion vacated).

The loss of liberty interest is also substantial. Had they not "posted and forfeited," plaintiffs would have had to spend a night in jail. Moreover, Mr. Kincaid, Mr. Crawford, and Mr. Bugg Bey were each detained at the station while the MPD processed the post and forfeit procedure.

Moreover, the fact that a person posted and forfeited is put on CourtView, the official docket of the Superior Court, under the criminal calendar. And the person has an arrest record.

risk of an erroneous deprivation. The risk of an erroneous deprivation of such interests through the procedure is great. First, the risk of error in warrantless arrests is high. Judge Sullivan recently applied the Mathews "risk of erroneous deprivation" when the District seizes a vehicle pursuant to a traffic stop for civil forfeiture and he found that risk was present because of the rushed nature and complex fact patterns presented by such stops stating, "there is an inherent risk of error when a seizure is based a traffic stop: namely, its validity rests solely on the arresting officer's unreviewed probable cause determination." Simms, 872 F. Supp. 2d at 101-102.

Moreover, warrantless arrests are presumed unlawful, with the burden on the government to justify the arrest by probable cause. See, e.g., Arkansas v. Sanders, 442 U.S. 753, 760 (1979).

The danger of erroneous deprivation is particularly high for the category of persons arrested without probable cause or who simply did not commit the offense for which they were charged and posted and forfeited. See Simms v. District of Columbia, 872 F. Supp. 2d 90, 102 (D.D.C. 2012)( the danger of erroneous deprivation is particularly high for "innocent owners").

Disorderly conduct arrests are especially prone to error because during the Class Period when Mr. Bugg Bey posted and forfeited for disorderly conduct the District was deliberately indifferent to

disorderly conduct arrests without probable cause. Complaint ¶ 68 citing Longus Report; Huthnance v. District of Columbia, 793 F. Supp. 2d 183 (D.D.C. 2011); Complaint ¶ 105, study analyzing disorderly conduct arrests found 62% of the most problematic arrests for disorderly conduct were found in arrests that resulted in release through the post-and-forfeit procedure.

Other factors contributing to the "risk of erroneous deprivation" when the District arrested someone during the Class Period and forced them to post and forfeit are arrest for offenses such as disorderly conduct and POCA are most susceptible to abuse and the presence of racial disparities. Report of James Ginger, attached as Exhibit 2 to Longus Report. Ps. Ex. # 6 (p. 48 of report); Chief Longus, Longus Report, ¶ 105, Ps. Ex. # 6 (tendency of the police to use minor infractions to "punish" citizens they think are challenging them, especially "on sight" disorderly conduct offenses).Nearly seven out of 10 traffic arrests made in the District of Columbia during 2009-2011 were of African Americans. Racial Disparities in Arrests in the District of Columbia, 2009-2011, Report of the Washington Lawyers' Committee for Civil Rights & Urban Affairs, pages 2-3.

In fact, the MPD had trouble with even the ministerial task of assessing the correct amount of the post and forfeit fine especially in POCA cases. see Tachebele v. DC, 12-01806-RJL (District settles class action alleging widespread overcharging for post and forfeit fines). Ms. Tachebele's CourtView docket sheet lists an overage of $25. 2010 PAF 001128.

Also contributing to the risk of error is the lack of a neutral and detached magistrate to make the probable cause determination. Gerstein v. Pugh, 420 U.S. 103, 113-114 (U.S. 1975). The fact that the arresting officer may have consulted with their supervisor or that other officers may have made or approved the decision does not lower the risk of erroneous deprivation. For example, in Nat'l Council of Resistance the government argued that the fact that the Secretary of State must consult with the Attorney General and the Secretary of Treasury before designating a foreign terrorist organization, and must notify

congressional leaders seven days before designating such an organization, did not lower the risk of erroneous designation. 251 F.3d 206-07.

Glaringly absent in the present system if the lack of an opportunity for the arrestee to present his side of the events and to make the government listen. <u>Fuentes</u>, 407 U.S. at 81-82. Moreover, in order to defend himself the arrestee would have to waive their Miranda rights.

Even if the MPD did allow the arrestee to present their side of events there is nothing in the statute to prevent the MPD from relying on those admissions to charge them instead of releasing them. Moreover, even if the MPD resolves an arrest using the administrative post and forfeit procedure the statute specifically authorizes the OAG to disregard the arrestee's post and forfeit and to initiate a prosecution. D.C. Code § 5-335.01 (d)(6) upon motion to the Superior Court.

The probable value, if any, of additional or substitute procedural safeguards is high, because they would stop the practice of forcing persons who did not commit the offense they posted on to post and forfeit on disorderly conduct. The cost of providing a hearing before neutral decision makers such as an administrative law judges or lawyers hired as part time hearing examiners is not high because existing administrative law judges or lawyers hired as hearing examiners could provide the hearings. While cost to the government is a factor, cost alone cannot excuse the failure to provide adequate process. <u>Propert</u>, 948 F.2d at 1335.

Anyway, even a hearing before an administrative law judge is not necessary in every case. http://dmv.dc.gov/services/pay-ticket. For example, the Department of Public Works which adjudicates most parking tickets allows a person to pay online, admit with an explanation online, <u>http://dmv.dc.gov/service/admit-explanation</u>, or even contest a ticket. Online. http://dmv.dc.gov/node/1119647. Or, a person can simply go to an office and make a "walk in challenge." Moreover, most people will simply find it more convenient to pay.

<u>government interest</u>. The government has no **legitimate interest** in collecting the post and forfeit fine for

post and forfeits" at the station before release and before people have had their constitutionally

mandated liability hearings. *See* CCE Post-Arrest Report, p. 11 (identifying difficulty of collection as

major barrier to reclassifying low level misdemeanors such as "collateral offenses" as civil infractions)..

The government has no interest in using its police force as a collections bureau to collect fines by

imposing them before liability findings.

V. **Claim 3; Plaintiffs Allege Fourth Amendment Violations Because Their Money Was Seized**
   **And The Seizures Were Not Supported By Probable Cause.**

Forcing plaintiffs to pay the post and forfeit fines (especially to gain their release) violated

plaintiffs' Fourth Amendment rights because their money was seized and the seizures were not

supported by probable cause, and because of their right to be free from seizure and detention except on

probable cause, and because defendant's officers held the plaintiffs held plaintiffs for an illegitimate

purpose under <u>Riverside</u>. <u>Soldal v. Cook Cnty., Ill.</u>, 506 U.S. 56, 61-62, 68 (1992). Moreover, a police

officer's finding of probable cause can justify a seizure of property or a temporary deprivation of

property but not a permanent deprivation of property as is the case here. <u>Gerstein v. Pugh</u>, requires not

only that an arrest be supported by probable cause to justify continued detention but also that the

probable cause finding be made by an impartial and neutral magistrate. <u>Gerstein v. Pugh</u>, 420 U.S. at 125

n.27. Plaintiffs did not abandon their ownership over the post and forfeit fines they paid by electing to

file a federal lawsuit instead of filing a motion pursuant to D.C. Code 5-335.01. As explained above in

the section on exhaustion of remedies, plaintiffs were not required to exhaust local remedies and Code §

5-335.01(d)(6) is not a precondition to suit in federal court.

Moreover, each plaintiff was arrested without probable cause, and so for the reasons explained above, each plaintiff was entitled to release. But, instead of releasing plaintiffs, defendant's officers conditioned their release on post and forfeiting."

## VI.     Claim 4; Plaintiffs State Fifth Amendment Substantive Due Process Claims.

The substantive component of the Due Process Clause "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." <u>Collins v. City of Harker Heights</u>, 503 U.S. 115, 124 (1992) (internal citations omitted). Imposing fines without a liability finding of any sort violates interests that are so fundamental that the government cannot invade them even if it follows a seemingly fair process. <u>Id</u>.

Moreover, imposing fines without a liability finding is not rationally related to any legitimate government interest that the District has such as a "general police power" and "preventing overcrowding of its jails, and not expending its limited resources on prosecuting petty offenses." <u>Joseph v. Henderson</u>, 834 So. 2d 373 (Fla. Dist. App. 2003) (stating statute authorizing twenty dollar booking fee upon prisoner's return from appearing at a habeas corpus hearing violated the prisoner's **substantive** due process because it was arbitrary and irrational). Municipalities cannot dispense with the constitutional protections when handling minor offenses. <u>See</u> <u>e.g.</u> <u>Papachristou v. City of Jacksonville</u>, 405 U.S. 156, 170-171 (1972).

## VII.    Claim 5; Post-and-Forfeit Procedure Is Void for Vagueness.

Vagueness may invalidate a criminal law for either of two independent reasons. First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement. <u>City of Chi. v.</u>

Morales, 527 U.S. 41, 56 (1999). Under Morales, the post and forfeit statute violates the second prong of the vagueness doctrine, arbitrary and discriminatory enforcement. Id. at 60-64.

The District defended the post and forfeit statute in its Motion to Dismiss and Memorandum [13] on the theory that the vagueness doctrine applies only to penal statutes. Memorandum, p. 8. This is wrong. In *Giaccio v. Pennsylvania*, 382 U.S. 399 (1966) the Supreme Court held that an ancient Pennsylvania statute that permitted the jury to impose court costs upon an acquitted defendant, in order to offset the expenses of prosecution, violated the Due Process Clause because of vagueness and the absence of any standards preventing the arbitrary imposition of costs. Id. at 402-03. Therefore, because the District did not defend the statute on the second prong, the arbitrary and discriminatory enforcement prong, the District waived this defense, because arguments raised for the first time in a reply brief are deemed waived. Estate of Gaither v. District of Columbia, 655 F. Supp. 2d 69, 87 n.13 (D.D.C. 2009).

Moreover, the Medina v. California, 505 U.S. 437, 445 (1992) test does not apply either, as the District contends. *See* Memorandum, pgs. 5-6. Medina applies to challenges to the process afforded during criminal proceedings themselves. Krimstock v. Kelly, 464 F.3d 246, 254 (2d Cir. 2006).

The Morales Court invalidated a loitering ordinance under the 5th Amendment rather than the 1st Amendment. *527 U.S. at 60-65.* The three step analysis of the Morales Court was: (1) is the language of the statute vague, either because the meaning of its terms were unclear or they are overbroad; (2) if yes, is there a *mens rea* requirement to cabin the discretion of the arresting officer; (3) if no *mens rea* requirement, then a "dispersal order" will not save the overbroad (*i.e.*, vague) statute because, absent an appropriate *mens rea* requirement, a "dispersal order" element magnifies the police officer's discretion rather than limiting it. Id. A key feature of the Morales Court's analysis is that a statute can be vague under a due process vagueness challenge not only because of uncertainty about the normal meaning of

its operative terms, but also because of uncertainty about what is covered by a well-known term. 527 U.S. at 57.

The post and forfeit statute is unconstitutionally vague under the second prong of the vagueness doctrine, the arbitrary and discriminatory enforcement prong, for the same reasons as the Chicago "loitering" plus ordinance which the Morales Court invalidated, that is, the "broad sweep of the" statute reaches a substantial amount of innocent conduct and the text of the statute lacks any "minimal guidelines to govern law enforcement." Morales, 527 U.S. at 60, citing Kolender v. Lawson, 461 U.S. 352, 358 (1983).

D.C. Code § 5-335.01 does not provide any criteria to MPD about how to administer post and forfeit procedure. It does not even specify that the post and forfeit procedure should be limited to persons arrested on probable cause. Nothing prevents the MPD from imposing the post and forfeit fine on people such as Mr. Kincaid and Mr. Bugg Bey who clearly should have been released for lack of probable cause to support the arrest. The disconnect between fault and the application of the post and forfeit statute is illustrated by the fact that a judicial officer of the Superior Court found that Mr. Fox did not commit the offense of disorderly conduct – the offense he posted for – but that finding did not justify a refund under the post and forfeit procedure. A fault element in the "post and forfeit" statute, like the intent element in a criminal ordinance or statute, would limit the MPD's discretion to apply the statute in an arbitrary and discriminatory way. Morales, 527 U.S. at 60-65.

Moreover, under the "hybrid" system the "post and forfeit" statute is criminal when the District wants it to be criminal and civil only when the District wants it to be civil. The MPD have sole discretion to offer a civil resolution instead of a criminal resolution. If the arrestee contends that they were arrested without probable cause or are otherwise have a defense the MPD converts the charge back to a criminal

resolution. Moreover, the OAG can on motion to the Superior Court reclassify the case as criminal and initiate criminal charges after a person had "posted and forfeited." D.C. Code § 5-335.01(d)(6). Finally, if, after post and forfeiting", the person wants a refund the case again reverts to a criminal case. <u>Id</u>.

The statute grants the MPD total discretion to decide whose case gets treated as a criminal case and whose case gets treated as a civil infraction. It also allows the MPD to fashion its own rules about which conduct the statute applies to. In effect, the statute transfers the legislature's discretion to define offenses and the prosecutor's discretion whether to charge categories of offenses or charge categories of people or individual persons to the MPD.

This is one of the major problems with the hybrid nature of the post and forfeit procedure. The MPD has at its disposal all the coercive power of the police powers to arrest and charge an arrest as a criminal case. Their decisions during the Class Period were not reviewed by either the OAG or any judge. They also have complete discretion unfettered by any guidelines in the post and forfeit statute to grant or withhold "civil" treatment of the arrest and they also have complete discretion unfettered by any guidelines in the post and forfeit statute to make an arrestee arrested without probable cause elect between post and forfeit release or referral to a prosecutor in cases where the arrestee should simply be released for lack of probable cause. And the arrestee must make their election without benefit of counsel or even without a copy of the probable cause narrative. And even if the MPD make a release as a post and forfeit the statute authorizes the OAG to convert the case back into a criminal case on motion to a Superior Court judge. So the arrestee's conduct is not voluntary in any meaningful sense of the word.

No guidelines in the text of the statute cabin any of these functions. The MPD decide which criminal charges it shall "resolve" under the post and forfeit procedure without providing any guidelines to cabin the MPD discretion. Moreover, the District of Columbia Court of Appeals, the highest court in

the "state," has not issued any limiting construction of the statute. See *Kolender*, 461 U.S. at 355-356, n. 4. The general orders, themselves promulgated by the MPD, do not serve to cabin the MPD's discretion. *See* Morales, 527 U.S. at 63.

Moreover, the fact that the "post and forfeit" statute does not have a *mens rea* requirement or a dispersal order does not distinguish it legally from Morales under the second prong of the vagueness doctrine.

The 9th Circuit's analysis of the text of the Los Angeles ordinance in Desertrain v. City of Los Angeles, 754 F.3d 1147 (9th Cir. Cal. 2014) illustrates how overbroad language in a statute dooms it under the second prong of the vagueness doctrine, the "arbitrary and discriminatory enforcement" prong, regardless of the dispersal order element. In Desertrain the 9th Circuit held that a Los Angeles municipal ordinance was void for vagueness under **both** prongs[4] of the vagueness doctrine. 754 F.3d at 1156. Desertrain involved a facial vagueness challenge to a Los Angeles ordinance which prohibited the "'use [of] a [vehicle parked on city property] as living quarters either overnight, day-by-day, or otherwise.'" 754 F.3d at 1149. The ordinance did not have either a *mens rea* requirement or a dispersal order[5] element. Id. The Desertrain Court held that the record plainly showed that some of the conduct plaintiffs were engaged in when arrested — eating, talking on the phone, or escaping the rain in their vehicles — "mimics the everyday conduct of many Los Angeles residents." 754 F.3d at 1157. Therefore, because the ordinance provided "no standards governing the exercise of . . . discretion," it became "a

---

[4] Under Morales, a dispersal or move on order arguably may have made the ordinance under the first prong, adequate notice, even absent an appropriate *mens rea* requirement, but not under the second prong. *See* Morales, 527 U.S. at 57-59.

[5] A dispersal order element would not have saved the statute under the second prong because the language of the statute was overbroad and it lacked an appropriate *mens rea* requirement. Morales, 527 U.S. at 60-64.

convenient tool for harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure," that is, the homeless 754 F.3d at 1157. Similarly, much of the conduct plaintiffs in this case were engaged in when arrested is not illegal.

Moreover, the post and forfeit procedure results in a fine and a disposition that "terminates" the prosecution, resembling a plea more than an arrest, and so the principles underlying rules governing informations under Superior Court Crim. Rule Proc. 7(a) and (c) (requiring "plain, concise and definite written statement of the essential facts constituting the offense charged") must apply so the accused knows what he is post and forfeiting" on so, if other coercive and abusive factors were removed, for example in a "post and trial" context, he could make an intelligent and voluntary decision whether to post because different offenses have different elements and different consequences. Moreover, the post and forfeit procedure on its face does not offer preclusive effect against other charges arising from the same incident. Construing the post and forfeit procedure to allow the MPD discretion to take post and forfeit amounts on a charge not supported by probable cause renders the post and forfeit procedure void for vagueness and overbroad.

Furthermore, allowing the MPD to select any offense for the post and forfeit offense, even one not supported by probable cause, leaves the definition of the terms of the post and forfeit procedure to law enforcement officers, and thereby invite arbitrary, discriminatory and overzealous enforcement. Morales; Desertrain; Cullinane, 566 F.2d at 188. Allowing the MPD to arrest for one charge but to "offer" post and forfeit on another unconstitutionally allows police to "set" or "admit" to bail as opposed to taking bail pursuant to a schedule set by the Board of Judges by allowing them to select a charge (with a different bail or collateral amount) the arrestee did not commit and set collateral amounts in violation of D.C. Code § 23-1321(a)(judicial officer sets bail) and D.C. Code § 23-1110 and D.C. Code § 5-335.01(g)(MPD must use collateral amounts established by Board of Judges).

### VIII.   Liability of the District in Conversion.

Plaintiffs post and forfeiting" was not voluntary, or even if voluntary, was not enforceable under Rumery, as explained above. An action for conversion lies where a person wrongfully acquires possession of property or retains possession and exercises dominion over it in a wrongful, illegal or unlawful manner. Chase Manhattan Bank v. Burden, 489 A.2d at 497.

As established above, the essence of plaintiffs' post and forfeit claim is that they paid the post and forfeit fee as a result of an unfair, invalid, coerced and non-judicial process of obtaining the collateral. The combination of arrest, detention, requirement of bond as a condition of release, all pursuant to practices of the MPD known to and acquiesced in by the District, violated their Fourth Amendment and Fifth Amendment rights, and so was illegal. See Sullivan, 478 F.2d at 975.

### IX.   Monell and respondeat superior liability of the District.

The District does not separately challenge plaintiffs' Monell claims against the District on the post and forfeit claims.

The post and forfeit statute is facially unconstitutional for these reasons stated above: it lacks a pre- or post deprivation hearing; it imposes a fine without regard to fault; and it is void for vagueness. The statute is a policy of the District enforced through the District's employees. A municipality is liable under 42 U.S.C. § 1983 for constitutional deprivations caused by the municipality's implementation or execution of an unconstitutional municipal policy or custom. Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978). Monell established that alleging that a municipal policy or ordinance is itself unconstitutional is always sufficient to establish the necessary causal connection between the municipality and the constitutional deprivation, because an employee's act of enforcing an

unconstitutional municipal policy may be considered the act of the municipality itself. Id. at 694;

Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 125 (2d Cir. 2004).

The District is liable under the theory of respondeat superior for the conversion claim for the

intentional torts of its police officers acting within the scope of their employment, as the police here

were. Graves v. District of Columbia, 287 A.2d 524, 524-525 (D.C. 1972). The well pled facts in the

complaint clearly support the inference that the District's officers acted within the scope of their

employment.

### A. 12-309 Not A Bar To Plaintiffs Conversion Claims.

Section 12-309 not a bar to plaintiffs' conversion claims for two reasons – Mr. Fox filed a 12-309

notice on these claims and even without a 12-309 notice the District liable for the liquidated damages of

returning post and forfeit fines with interest. Section 309 does not by its terms require any claimant to file

notice personally. Dellums v. Powell, 566 F.2d 216, 229 (1977). Notice may be made through an agent

or attorney such as class counsel. Id. And although such an agent or attorney might normally be expected

to disclose the name of his principal, the statute does not require giving the claimant's name, but only "the

approximate time, place, cause, and circumstances of the injury or damage." Id.

### PLAINTIFFS' CLASS ACTION COMPLAINT WAS TIMELY FILED BECAUSE THE AMERICAN PIPE CLASS ACTION TOLLING DOCTRINE TOLLED THE STATUTE OF LIMITATIONS

Defendant contends that Ms. Tachebele, Mr. Crawford, and Mr. Bugg Bey's claims are time

barred because the applicable statute of limitations on their claims is three years, D.C. Code § 12-301(3),

the District's the general or residual statute for personal injury actions, and more than three years have

gone by since they posted and forfeited. Memorandum, p. 13. But, the statute of limitations is an

affirmative defense and the District bears the burden of establishing facts supporting the defenses. Tech

7 Sys. v. Vacation Acquisition, LLC, 594 F. Supp. 2d 76, 81 (D.D.C. 2009). The defenses may be raised by pre-answer motion under Rule 12(b) only when the facts that give rise to the defense are clear from the face of the complaint. Alberts v. Tuft (In re Greater Se. Cmty. Hosp. Corp.), 333 B.R. 506, 516 (Bankr. D.D.C. 2005).

Plaintiffs' complaint expressly pled that the running of the statute of limitations on their claims was tolled under American Pipe by the filing of two previous, sequential class actions with the same class definition. Second Amended Complaint, ¶ n.1. (Fox, et al. v. Government of the District of Columbia, et al., 10- 2118 (ABJ/JMF)(judgment entered as to Mr. Fox's claims on 2/28/2014 [89]) and Scott v. District of Columbia, 14-817 (GK)(plaintiffs' claims dismissed 4/9/15)). The District did not address the American Pipe tolling issue or object to plaintiffs' filing a sequential class action and so the District waived this defense. Estate of Gaither, 655 F. Supp. 2d at 87 n.13 (arguments raised for the first time in a reply brief are deemed waived). Plaintiffs nonetheless address the issue but reserve their right to respond to any defense the District might raise in a reply.

The American Pipe class action tolling doctrine tolled the statute of limitations for Ms. Tachebele, Mr. Crawford, Mr. Bugg Bey and every absent class member of the Fox case, Fox v. District of Columbia, 10-2118 (ABJ), from the date of filing, 12/15/2010, until the date the clerk entered judgment in the case on the District's Rule 68 offer of judgment, 2/28/2014. American Pipe, 414 U.S. at 553.

Under American Pipe, filing a class action complaint hits the "pause button" on the running of the statute of limitations  for the claims of all purported class members. Barryman-Turner v. District of Columbia, 2015 U.S. Dist. LEXIS 96693, *16 (D.D.C. July 24, 2015). The statute of limitations ceases to run for the entire period from the day a class action is filed until the class is decertified or the court

declines to certify the class, after which it runs for the full number of days that were remaining on the statute when the class action was commenced. Id. at *16-17.

Moreover, regardless of whether the issue preclusion doctrine ever operates to bar a successive class action after a denial of class action treatment in a prior case, the issue preclusion doctrine does not apply here to bar Ms. Tachebele, Mr. Crawford, Mr. Bugg Bey's class action for the same reason the rule did not bar Mr. Sawyer's class action in Sawyer v. Atlas Heating – the original putative class action ended before the Court could make a certification decision which found the suit "inappropriate for class action status." American Pipe, 414 U.S. at 553; Sawyer, 642 F.3d at 564.

### A. All absent class members' three year limitations period began December 15, 2007 and tolling continued through February 28, 2014, the date judgment was entered on Mr. Fox's entire case.

As the Supreme Court recognized in American Pipe, the filing of a class action complaint within the statutory period freezes the statute of limitations for all absent class members whose claims accrued within the statute of limitations. The statute of limitations for Mr. Fox's class claims is three years as the District concedes. Memorandum, p. 6. Thus, when Mr. Fox filed his class action complaint on December 15, 2010, the class included every person whose claim accrued on or after December 15, 2007. Under the American Pipe class action tolling doctrine the statute of limitations froze upon filing for every absent class member as though they were parties. 414 U.S. at 551. Any other rule would mean that every day a day's worth of class members would lose their claims as time moved forward.

### B. The statute of limitations was tolled in Fox until 2/28/2014, the date the judgment was entered on Mr. Fox's whole case, not just until the date the Court dismissed the class claims, or denied the Rule 54(b) motion.

The American Pipe class action tolling doctrine serves two policies: (1) to preserve the functional operations of statutes of limitations, which seek both to provide defendants with notice of claims against them and to ensure that plaintiffs do not sleep on their rights; and (2) to promote the Rule 23 policies.

American Pipe, 414 U. S. at 554-55. The statutes of limitations policy governs whether tolling applies and for how long; the Rule 23 policy governs whether to allow successive class actions. The reasoning of the American Pipe opinion requires that its doctrine be applied in situations beyond the particular facts presented in that case. McCarthy v. Kleindienst, 562 F.2d 1269, 1272 (D.C. Cir.1977). Therefore, the policy considerations outlined in American Pipe call for a broad reading of the decision. Id. at 1273. Based on American Pipe and Crown Cork and the policies underlying those decisions the statute of limitations was tolled in Fox from the date the case was commenced until the date judgment [89] was entered on Mr. Fox's entire case on 2/28/2014 pursuant to Rule 68. American Pipe, 414 U.S. at 554.

In previous litigation the District conceded that tolling in Fox ended at the very latest upon denial of Mr. Fox's motion for reconsideration or denial of his motion for Rule 54(b) certification of his class post-and-forfeit claim [80] on 10/03/2013 rather than when the case ended. Memorandum, p.10, n.4, Scott v. District of Columbia, 14-817 [Document # 19]. But, the District offers no sound reason for ending tolling at either of these points while the case and the class claims were still pending and such a rule "would sanction duplicative suits and violate the policies behind American Pipe" since dismissal is an interlocutory order subject to reversal at any time before entry of a final judgment, Rule 54(b). This Court did not apply this rule in Barryman-Turner, 2015 U.S. Dist. LEXIS 96693, *16-17. Under Barryman-Turner, a case is a case is a case and tolling is not over till the case is over. Id.

The District confuses dismissal of a claim with denial of a motion for class certification. Vertrue v. Vertrue, Inc. (In re Vertrue Mktg. & Sales Practices Litig.), 719 F.3d 474, 480 (6th Cir. 2013). It is only the dismissal of the entire Fox case (in this case by entry of judgment pursuant to Rule 68) that "foreclosed the possibility that any decision on the certification issue would be forthcoming." Vertrue v. Vertrue, Inc., 719 F.3d at 480; In re Vertrue Mktg. & Sales Practices Litig.,712 F. Supp. 2d 703, 717 (N.D. 2010)("Dismissal of a claim is not akin to a ruling on class certification. The two concepts are

entirely separate and distinct. Whether class treatment is appropriate is wholly independent of whether a claim succeeds on the merits."). Tolling ends when a case is "conclusively not a class action" not when a claim is dismissed. Sawyer, 642 F.3d at 565. A case is "conclusively not a class action" when class action treatment has been denied or the case is entirely over meaning that the possibility of certification is also over. Id. It is true that in a case like Mr. Fox's where the case was dismissed without certification it is the dismissal that extinguishes any prospect of certification, but nonetheless the doctrinally significant event[6] is the case is "conclusively not a class action." Id. at 563.

Moreover, Fox ended because the District "bought off[7]" Mr. Fox's claims rather than he "abandoned" them after deciding "not to throw good money after bad." In fact, the District threw quite good money at Mr. Fox; the District paid Mr. Fox $80,000 pursuant to a Rule 68 offer that covered all of

---

[6] Part of the District's confusion stems from failing to understand that denial of a motion for certification where "the court has found the suit inappropriate for class action status" serves two functions in cases applying the American Pipe class action tolling doctrine. First, a denial of certification marks out the point where tolling ends. American Pipe, 414 U.S. at 553. Second, most courts use the basis of a denial of certification to decide whether to allow a second (or third) class action by applying the doctrine of issue preclusion to the question of whether a sequential class action can be filed. See e.g., Sawyer, 642 F.3d at 563. These courts hold that a previous denial of class-action treatment precludes further class-action treatment only if the court denies certification for a reason that would be equally applicable to any later suit such as numerosity, lack of predominance, or lack of manageability. Sawyer, 642 F.3d at 563. However, the viability of applying the doctrine of issue preclusion to subsequent class actions is questionable following the Supreme Court's opinion in Smith v. Bayer Corp. which held that issue preclusion, since it applies only to the parties in the case, does not apply to preclude subsequent attempts to obtain certification of the same claim by absent class members. Smith v. Bayer Corp., 131 S. Ct. 2368, 2379-81 (2011); Smentek v. Dart, 683 F.3d 373, 375 (7th Cir. 2012)(relying on Smith v. Bayer Corp. holding that issue preclusion doss not prevent court from certifying class where two different judges in same District had previously refused to certify identical classes with different class representatives). But, regardless of whether the issue preclusion doctrine ever operates to bar a successive class action after a denial of class action treatment in a prior case, the issue preclusion doctrine does not apply here to bar Ms. Tachebele, Mr. Crawford, Mr. Bugg Bey's class action for the same reason the rule did not bar Mr. Sawyer's class action – the original putative class action ended before the Court could make a certification decision which found the suit inappropriate for class action status so issue preclusion does not apply. American Pipe, 414 U.S. at 553; Sawyer, 642 F.3d at 564.

[7] The term "bought off" is the Seventh Circuit's terminology. Sawyer, 642 F.3d at 563. Mr. Fox's terminology is that after vigorously pursuing the post and forfeit class claims for four years without success Mr. Fox accepted the District's Rule 68 offer to end the entire case.

his claims, his class claims as well as his individual false arrest claims [89]. A defendant's "buying off" the named plaintiff after the statute of limitations would expire without tolling, hoping to extinguish class members' claims, is "a good reason for tolling, not a reason for blocking later suits." Sawyer, 642 F.3d at 563. Allowing the District to buy a release from Mr. Fox for his class claim on 2/28/2014, the date the Rule 68 judgment was entered, and then to claim that class tolling ended a year earlier on 10/3/2013, the date the Court denied the motion to allow an interlocutory appeal of the class claims, would be unfair because it would allow the District to have it both ways.

The policy reasons relied on by American Pipe and Crown Cork support extending tolling during the pendency of the case including the period from the initial dismissal of the post and forfeit class claims through entry of final judgment in Fox for three reasons.

First, the Fox case was still pending without a certification decision which found the suit inappropriate for class action status, American Pipe, 414 U.S. at 553; Sawyer, 642 F.3d at 564, after the dismissal of the class claims, because the order dismissing the class claims was an interlocutory order, because some of Mr. Fox's claims (and Mrs. Fox's) remained, and so the class claims could have been resurrected at any time during the period from dismissal until final entry of judgment. Filebark v. U.S. Dept. of Transp., 555 F.3d 1009, 1013 (D.C. Cir. 2009). A district court has authority under Fed. R. Civ. P. 54(b) to revise its interlocutory orders at any time before entry of final judgment. Id. An order dismissing a claim is an interlocutory order and "[i]nterlocutory orders are not subject to the law of the case doctrine and may always be reconsidered prior to final judgment." Courts may change interlocutory orders as a case progresses. For example, in Filebark, the district court denied a motion to dismiss on one claim, denied a motion to reconsider that dismissal in a minute order, but then in a second opinion granted the motion to dismiss without an intervening change of law or new facts. Filebark, 555 F.3d at 1011. Adopting the rule the District proposes – tolling ends at entry of an interlocutory order rather than

at the end of the case - would deprive Rule 23 class actions of the efficiency and economy of litigation which is a principal purpose of the procedure, <u>American Pipe</u>, 414 U.S. at 553, because it would encourage absent class members to file precautionary suits upon entry of an interlocutory order which is subject to revision until final entry of judgment.

Under the District's rule, and absent a "bright line" rule that a claim is not "conclusively" over until the case is over (or a Rule 54(b) order granted on a claim), plaintiffs would have to file precautionary cases upon the issuance of interlocutory orders even though interlocutory orders are by their very nature subject to change. A "bright line" rule that tolling continues until the end of the case rather than the end of the class claims also furthers the <u>American Pipe</u> goal of enabling members of a putative class to rely on a pending putative class action to protect their interests while avoiding multiple lawsuits caused by precautionary filings by absent class members to guard against an adverse outcome in the original case, 414 U.S. at 553-54. This goal can be achieved only if absent class members can wait till the end of the case to see what the outcome will be. Otherwise they will have to make guesses as the case progresses about whether an interlocutory order will remain in place until the case is finally over. <u>McCarthy</u>, 562 F.2d at 1272-73 (reasoning of <u>American Pipe</u> opinion requires that its doctrine be applied in situations beyond its facts so <u>American Pipe</u> policy considerations call for broad reading of decision). Plaintiffs' proposed rule also harmonizes with the policy of Rule 54(b) which makes interlocutory orders subject to revision.

The language and rationale of <u>Sawyer</u> also supports plaintiffs' position. <u>Sawyer</u> says that tolling does not end until a case is "**conclusively** not a class action -- which may be because the judge rules adversely to the plaintiff, or because the plaintiff' ends the case. <u>Sawyer</u>, 642 F.3d at 563(emphasis added). An interlocutory order of dismissal with other claims remaining which is subject to revision does not **conclusively** end the case. *See e.g.,* <u>Filebark</u>, 555 F.3d at 1011.

Moreover, absent class members in this case were reasonably entitled to rely on Mr. Fox's complaint to toll the statute of limitations throughout the pendency of the case. Mr. Fox fought the dismissal of his class claims and for reinstatement of the class claims until the entry of judgment. Mr. Fox filed a motion for reconsideration [60] of his class claims on 9/28/2012 which was not denied [65] until 2/15/2013. He filed a motion for Rule 54(b) certification of his class post-and-forfeit claims [72] which was not denied until 10/3/2013 [80] and judgment was entered **on all of Mr. Fox's claims, including the class claims,** just four months later on **2/28/2014 [89]**. Moreover, the District's offer of judgment was for all of his claims, his class claims as well as his individual claims. District's offer of judgment, [89] Fox v. District of Columbia, 10-2118 (ABJ). Therefore, these claims survived as long as the District was willing to pay to extinguish them.

Nor was the District prejudiced or surprised contrary to the purposes of the statute of limitations by Ms. Tachebele, Mr. Crawford, Mr. Bugg Bey's class action claims because it had notice through the Fox complaint of "the essential information necessary to determine both the subject matter and size of the prospective litigation," the substantive claims, and the number and generic identities of the potential plaintiffs in this case. American Pipe, 414 U.S. at 555; McCarthy, 562 F.2d at 1273. In fact, in their motion to transfer [14] filed in the Scott case, the District even provided a chart [14-1] detailing the similarities between the Scott case (and thus this case) and the Fox case and the four post and forfeit cases (Hodges, Jackson, Flores, and Hammond). Mr. Fox filed his motion for class action treatment before the District filed its motion to dismiss. Ordinarily, the one-way intervention protection of Rule 23(c) would prevent absent class members from bringing a second class action after an adverse decision on the merits. But, a defendant who moves to dismiss on the merits before the class determination expressly waives the one-way intervention protection of Rule 23(c) as defendant did in Fox. Bridges v. Blue Cross & Blue Shield Ass'n, 1995 U.S. Dist. LEXIS 9477, *8 (D.D.C. Jan. 23, 1995). The District

could have avoided this class action by litigating the certification motion in <u>Fox</u> before moving to dismiss the class claims. Then the dismissal would have bound absent class members. Instead, the District elected "one-way intervention." <u>Hyman v. First Union Corp.</u>, 982 F. Supp. 8, 11 (D.D.C. 1997). The downside of "one-way intervention" to the defendant is that it runs the risk that other class members will pick up the claims and claim the benefit of American Pipe tolling. <u>Id</u>.

Even after Judge Jackson dismissed the post and forfeit claims they still played an active role in the <u>Fox</u> case. The District opposed [73] Mr. Fox's motion [72] for a Rule 54(b) certification of his class post-and-forfeit claims for appeal by arguing that his post and forfeit claims against the District were so intertwined factually with his false arrest claims against the individual officers that "the claims against the District are [not] separable from those against the Defendant Officers." Opposition, [73, p. 2, 3 <u>et seq</u>.]. Moreover, Judge Jackson denied the motion in part because, "So, under Mr. Fox's own legal theory, the validity of the underlying arrest is an integral factor underlying the post-and-forfeit claims." Memorandum opinion [81], p. 3. (reference to document numbers here are to the <u>Fox</u> case)

Second, tolling continues through the date of the decision on an appeal if an appeal reverses a dismissal where there has been no final adverse determination of class claims. <u>In re Vertrue Mktg. & Sales Practices Litig.</u>, 712 F. Supp. 2d 703, 718 (N.D. Ohio 2010) *aff'm'd on appeal* by <u>Vertrue v. Vertrue, Inc. (In re Vertrue Mktg. & Sales Practices Litig.)</u>, 719 F.3d 474, 478 (6th Cir. 2013); <u>Hatfield v. Halifax</u>, 564 F3d 1177 (9th Cir. 2009). It stands to reason that in such a case tolling has to extend until the end of the **case** before it can extend to the end of the appeal. Moreover, members of a putative class are reasonably entitled during the pendency of the case until the end of the case to rely on a plaintiff to appeal the dismissal of their class. Otherwise they will have to make guesses as the case progresses about whether the class representatives will appeal an adverse decision on the merits of the claims when the

case is finally over. This is especially true in this case where Mr. Fox vigorously fought the dismissal of his class claims up until he accepted the Rule 68 offer of judgment.

Third, suits filed during the pendency of <u>Fox</u> **before** entry of final judgment in the **case** most likely would not have been eligible for tolling because of the "forfeiture rule." <u>Wachovia Bank</u>, 461 F. Supp. at 1011-12; Newburgh on Class Actions, § 9:63; Rhonda Wasserman, <u>Tolling: the American Pipe Tolling Rule and Successive Class Actions</u>, 58 Fla. L. Rev. 803, 833 (2006)("Wasserman"). The "forfeiture rule" holds that plaintiffs who file in the precertification decision period forfeit their opportunity to rely on <u>American Pipe</u>. Thus, the rationale of the <u>American Pipe</u> class action tolling doctrine actually argues against filing claims while the original class action case is still pending. <u>Id.</u>; <u>Wachovia Bank</u>, 461 F. Supp. at 1011-12. Any other rule would have required Ms. Tachebele, Mr. Crawford, Mr. Bugg Bey and other absent class members to file their own suits while Mr. Fox's suit was still pending, and thus such a rule would invite litigation rather than promote efficiency and thus "would sanction duplicative suits and violate the policies behind American Pipe." <u>Wachovia Bank</u>, 461 F. Supp. at 1011-12..

## C.  Ms. Tachebele, Mr. Crawford, Mr. Bugg Bey, as absent class members in Fox, may bring a new class action under the American Pipe class action tolling doctrine

The <u>American Pipe</u> class action tolling doctrine allows **absent class members** of an earlier class action that ended without certification, as <u>Fox</u> did, to press their claims in the context of a successive class action initiated by a new class representative. <u>Sawyer</u>, 642 F.3d at 564. As Judge Easterbrook phrased it, the <u>American Pipe</u> class action tolling doctrine does not "knock out Rule 23" whenever the time to sue has been extended by a tolling rule. <u>Id.</u> The same policies favoring Rule 23 that applied in the original class action also justify tolling in the successive class action context. Wasserman, p. 852. The trend in

federal Courts of Appeals that have addressed this issue is to allow tolling in the successive class action context, *see e.g.*, <u>Sawyer</u>, 642 F.3d at 563; <u>Vertrue</u>, 719 F.3d at 480.

**D.  Whether absent class members can bring a successive class action after the denial of a previous class-action or after the termination of an earlier putative class action without a certification decision is not a tolling issue**

Whether absent class members can bring a successive class action after the denial of a previous class-action or after the termination of an earlier putative class action without a certification decision the suit inappropriate for class action status is not a tolling question. <u>Catholic Social Servs. v. INS</u>, 232 F.3d 1139, 1147 (9th Cir. 2000)(*en banc*); <u>Sawyer</u>, 642 F.3d at 563. In <u>American Pipe</u> the Court concluded that the statute of limitations' "polic[y] of ensuring essential fairness to defendants . . . [is] satisfied . . . ." as long as "the defendants have the essential information necessary to determine both the subject matter and size of the prospective litigation" within the statutory period. 414 U.S. at 554-55. "Thus, the primary purpose of the statute of limitations—to provide repose to the defendant—is no more frustrated in a second class action than in the procedural settings presented in <u>American Pipe</u> and <u>Crown, Cork</u>." Wasserman, p. 850. Moreover, absent class members who reasonably rely on the resolution of the class issue in the original class action before pursuing other litigation options can hardly be accused of sleeping on their rights. <u>Id</u>.

Most decisions analyze the sequential class action issue as a preclusion issue, not a tolling issue. As Judge Easterbrook wrote in <u>Sawyer</u>, whether a second case may proceed as a class action concerns "not the statute of limitations or the effects of tolling, but the preclusive effect of a judicial decision in the initial suit applying the criteria of Rule 23." 642 F.3d at 563. "The propriety of class certification in Sawyer's suit has nothing to do with tolling or <u>American Pipe</u>, and everything to do with the preclusive effect of the first decision, plus a proper application of Rule 23's criteria." As Judge Easterbrook phrased it, the <u>American Pipe</u> class action tolling doctrine does not "knock out Rule 23" whenever the time to

sue has been extended by a tolling rule. <u>Sawyer</u>, 642 F.3d at 564. As Professor Wassersman points out, the same policies favoring rule 23 that applied in the original class action also are advanced when the District Court declines to certify class and an absent class member of the would-be class decides to bring a second class action rather than sue individually. Wasserman, p.852. In fact, allowing successive class actions actually helps defendants by shielding them from the burdens of multiple lawsuits and the risk of potentially inconsistent judgments. <u>Id</u>. at 853-854.

Recognizing that courts decide whether absent class members can bring a successive class action after the denial of a previous class-action or after the termination of an earlier putative class action without a certification decision on preclusion grounds clarifies that there is no Circuit split on this issue as the District contends in its Memorandum, p. 12, n. 7 where it cites <u>Sawyer</u>, 642 F.3d at 563. The cases the District cites are lifted from <u>Sawyer</u>, 642 F.3d at 563. The first line in the paragraph following the block of citations the District cites says: "There is no conflict. The decisions collected in the preceding paragraph concern, not the statute of limitations or the effects of tolling, but the preclusive effect of a judicial decision in the initial suit applying the criteria of Rule 23." <u>Sawyer</u>, 642 F.3d at 563.

The only Circuit Court decision that cannot potentially be explained on this basis is <u>Griffin v. Singletary</u>, 17 F.3d 356 (11th Cir. 1994), but this case is a poorly reasoned outlier based on the "non-piggyback rule" which says that absent class members may not bring a second class action or, as the <u>Griffin</u> Court phrased it, absent class members "may not piggyback one class action onto another and thus toll the statute of limitations indefinitely" even with new class representatives. <u>Griffin</u>, 17 F.3d at 359. But "piggybacking" is an argument based on policy concerns relating to use of the class action device and not on established principles of preclusion. <u>Smith v. Bayer</u>, 131 S. Ct. 2368, 2381 (U.S.2011). Justice Kagan writing for a unanimous Court demolished the basis of the <u>Griffin</u> "non-piggyback" rule (which defendant Bayer called "serial relitigation of class certification") by holding that "preclusion"

principles do not apply in successive class actions brought by absent class members with different named representatives because before the entry of a class action judgment binding all members described in the definition absent class members are not parties and "only parties can be bound by prior judgments." Smith v. Bayer, 131 S. Ct. at 2379.

Plaintiffs believe that issue preclusion does not apply in the successive class action context after the Supreme Court's decision in Smith v. Bayer Corp. where the class representatives are different because issue preclusion does not apply to nonparties and absent class members are not parties to a denial of class certification. Smith v. Bayer Corp., 131 S. Ct. at 2373; Smentek v. Dart ,683 F.3d 373, 375 (7th Cir. 2012)(relying on Smith v. Bayer Corp. Seventh Circuit holds that issue preclusion does not prevent court from certifying class where two different judges have previously refused to certify identical classes with different class representatives).

But, regardless of whether the issue preclusion doctrine ever operates to bar a successive class action after a denial of class action treatment in a prior case, the issue preclusion doctrine does not apply here to bar Ms. Tachebele, Mr. Crawford, Mr. Bugg Bey's class action for the same reason the rule did not bar Mr. Sawyer's class action – the original putative class action ended before the Court could make a certification decision which found the suit inappropriate for class action status. American Pipe, 414 U.S. at 553; Sawyer, 642 F.3d at 564.

## CONCLUSION

Wherefore, the District's motion to dismiss should be denied in its entirety.

| Respectfully submitted, | Respectfully submitted, |
|---|---|
| /s/ William Claiborne | /s/ Lynn E. Cunningham |
| WILLIAM CLAIBORNE | Lynn E. Cunningham, Esq. |

| D.C. Bar # 446579 | DC Bar # 221598 |
|---|---|
| Counsel for plaintiffs<br>2020 Pennsylvania Ave, NW<br>#395<br>Washington, DC 20006<br>Phone 202/824-0700<br>Email claibornelaw@gmail.com | Counsel for plaintiffs<br>306 Westview Drive,<br>Dubois, WY 82513<br>Phone: 307-431-4158<br>Email: lcunningham@law.gwu.edu |